A95A0691. GRAY et al. v. JOHN R. VAUGHN, M.D., P.C.
(460 SE2d 86)

BLACKBURN, Judge.

This is an appeal by plaintiffs/appellants from the trial court's grant of summary judgment in favor of defendant/appellee John R. Vaughn, M.D., P.C. (Vaughn, P.C.) in this medical malpractice action. The remaining defendants, Dr. Kulkarni; ABC, P.C.; and the Hospital Authority of Houston County d/b/a Houston County Medical Center (Medical Center) are not involved in this appeal.

The appellants, Daryl R. Gray and Tommie L. Gray, Jr., are the parents of a four-year-old son, Tommie L. Gray III (Tommie). On or about December 9, 1991, the Grays sought medical treatment for Tommie at the emergency room of Medical Center. By agreement with Medical Center, Vaughn, P.C. had contracted to provide physicians for Medical Center's emergency room. Vaughn, P.C. entered into an agreement with Dr. Kulkarni to provide the emergency room services for which it had contracted with Medical Center. Dr. Kulkarni was the physician on duty on December 9, 1991.

Upon their arrival at the hospital, the Grays were directed to a triage area in the emergency facility where nurses obtained the medical history and the vital signs of the child. Dr. Kulkarni considered this information in examining the child and diagnosing his condition. Dr. Kulkarni failed to diagnose the child's spinal meningitis condition and sent him home without proper treatment for his condition. The next day, the child's condition was properly diagnosed as spinal meningitis. The child lapsed into a coma and subsequently underwent amputations of both legs allegedly as a result of complications arising from the delay in properly treating the spinal meningitis.

The Grays instituted the instant action against Dr. Kulkarni; Vaughn, P.C.; ABC, P.C.; and Medical Center, asserting that the triage nurses were negligent in failing to adequately obtain, record, and communicate the child's medical history. The Grays further as-

serted that Dr. Kulkarni failed to properly examine, diagnose, and treat the child. Vaughn, P.C. responded to the complaint, denying liability and the material allegations of the complaint. Vaughn, P.C. subsequently moved for summary judgment, averring by affidavit that no one working in the emergency room on the subject night was its employee. The Grays later amended their complaint and alleged that Vaughn, P.C. had a duty to supervise the hospital's nurses in taking medical histories pursuant to the terms of its contract with Medical Center. The Grays further alleged that Vaughn, P.C. was responsible for the acts and omissions of Dr. Kulkarni based upon its contract with the physician.

In granting its motion for summary judgment, the court held that Vaughn, P.C. was not liable for the acts and omissions of the emergency room nurses under the borrowed servant rule espoused in *Ross v. Chatham County Hosp. Auth.*, 258 Ga. 234 (367 SE2d 793) (1988). The court further held that the contract between Vaughn, P.C. and Dr. Kulkarni was insufficient to hold Vaughn, P.C. liable for Dr. Kulkarni's acts as a purported employee. This appeal followed.

1. The Grays initially maintain that the trial court erred in granting summary judgment in favor of Vaughn, P.C. because it had a duty to supervise the triage nurses pursuant to its contract with Medical Center.

Paragraph 8 of the agreement between Vaughn, P.C. and Medical Center specifically states that "[Vaughn, P.C.] *assumes responsibility for the technical supervision of any such employee or servant and agrees to supervise closely their performance of duties in connection with the emergency services required by this Agreement. . . .* Although the [Medical Center] shall be responsible for the employment of personnel assigned to assist Physician Contractors in providing emergency services and professional medical services, [Vaughn, P.C. ] *shall be responsible for determining the manner and method in which said personnel assist the Physician Contractor in the diagnosis and treatment of illness or injury.*" (Emphasis supplied.)

Under the clear and unambiguous terms of the subject agreement, Vaughn, P.C. assumed responsibility for determining the manner and method of the performance of emergency room nursing duties by Medical Center's personnel and the supervision thereof. Vaughn's duty to supervise the triage nurses is created by its contractual obligation. This is not a case involving the "borrowed servant" rule. Cf. *Doctors Hosp. of Augusta v. Bonner*, 195 Ga. App. 152 (392 SE2d 897) (1990). The proper recordation and communication of a patient's vital signs, history, and complaints is essential to ensuring that a patient's condition is properly diagnosed by the examining physician, who is responsible for verifying the patient's condition and material history at the time of the examination where time and conditions per-

mit. The failure to properly supervise nursing personnel who assist in providing medical care can result in liability for any damages resulting from such failure by one whose responsibility it is to provide such supervision. Here, Vaughn, P.C. was contractually obligated to provide supervision of the triage nurses and cannot escape liability for any failure to do so based upon its contract with Dr. Kulkarni, whom it selected to meet its obligations to control and supervise the subject personnel.

Vaughn, P.C.'s reliance on the Supreme Court's decision in *Ross* is misplaced. In the present case, unlike in *Ross*, there is a contract of employment expressly providing for Vaughn, P.C.'s supervision of nurses and other Medical Center personnel who assist Vaughn, P.C. in providing emergency services in connection with the agreement.

Accordingly, Vaughn, P.C. is liable for damages resulting from any negligence by it or its agents in the supervision of the triage nurses in failing to adequately obtain, record, and communicate the medical history of the child to Vaughn, P.C.'s physicians. Consequently, the trial court erred in granting summary judgment in favor of Vaughn, P.C.

2. The Grays next assert that Vaughn, P.C. may be liable for Dr. Kulkarni's negligence in failing to properly diagnose the child's spinal meningitis because the corporation contractually agreed to control the time, manner, and method of his performance of emergency services. We disagree.

In order for Vaughn, P.C. to be held liable for any negligence of Dr. Kulkarni, it must be shown that the physician was an employee of the corporation. *Brown v. Coastal Emergency Svcs.*, 181 Ga. App. 893 (2) (354 SE2d 632) (1987), aff'd sub nom. *Richmond County Hosp. Auth. v. Brown*, 257 Ga. 507 (361 SE2d 164) (1987). "The true test of whether the relationship is one of employer-employee or employer-independent contractor is whether the employer, under the contract either oral or written, assumes the right to control the time, manner and method of executing the work, as distinguished from the right merely to require certain definite results in conformity to the contract." (Citations and punctuation omitted.) *Brown v. Coastal Emergency Svcs.*, supra at 894-895. See also *Sparlin Chiropractic Clinic, P.C. v. TOPS Personnel Svcs.*, 193 Ga. App. 181, 182 (2) (387 SE2d 411) (1989). The parties' agreement that a person is an independent contractor is not determinative of his or her status and other factors may negate such designation. See *Bonner*, supra.

The evidence was that four physicians, including John R. Vaughn, worked for Vaughn, P.C. Together, the four provided emergency room services as required by the contract between Vaughn, P.C. and the hospital. While Vaughn did schedule the shifts to be worked, he did so only after talking to the other doctors and ob-

taining their input. The doctors individually had to obtain staff privileges from the hospital and be credentialed to practice medicine, and Vaughn did reserve the right to terminate their services. Here, the claimed error made by Dr. Kulkarni was the failure to properly diagnose the onset of meningitis, by examining the patient and considering all information supplied by the doctor's discussion with the child's mother and the analysis of the history taken previously by the nurse.

"To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. . . . A *defendant* may do this by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a genuine jury issue on at least one essential element of plaintiff's case. If there is no evidence sufficient to create a genuine issue as to any essential element of plaintiff's claim, that claim tumbles like a house of cards. All of the other disputes of fact are rendered immaterial. [Cit.] A defendant who will not bear the burden of proof at trial need not affirmatively disprove the nonmoving party's case; instead, the burden on the moving party may be discharged by pointing out by reference to the affidavits, depositions and other documents in the record that there is an absence of evidence to support the nonmoving party's case." *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

Nothing in the written contract between Vaughn, P.C. and Kulkarni gives the corporation the right to control the method and manner of Kulkarni's *practice of medicine* while he is serving his shift at the emergency room. Compare *Doctors Hosp. of Augusta v. Bonner*, supra at 161 (6). Dr. Vaughn was not in the emergency room on the evening in question, and as far as the record reflects, there were no "corporate guidelines" relating to the practice of emergency room medicine other than the general standards overseen by the staff of the hospital in granting staff privileges and assuring quality control of medical care.

Here, also, there is the additional fact that there was posted in the emergency room a plaque which advised patients that the emergency room doctors were "independent contractors." No mention of Vaughn, P.C. was made in the notice. Therefore, there was no evidence which would support a finding that Kulkarni was an employee of Vaughn, P.C. or that the corporation had the right to control the method or manner of Kulkarni's performance of his medical duties.

Consequently, the trial court erred in granting summary judgment to Vaughn, P.C. based upon negligence in the supervision of the nursing staff, but did not err in granting summary judgment to Vaughn, P.C. for the professional negligence of Dr. Kulkarni.

*Judgment affirmed in part and reversed in part. McMurray, P. J., and Andrews, J., concur.*

DECIDED JULY 6, 1995 —
RECONSIDERATIONS DENIED JULY 13, 1995 AND JULY 14, 1995 —

*Reynolds & McArthur, Charles M. Cork III*, for appellants.
*Chambless, Higdon & Carson, Joseph H. Chambless, Jon C. Wolfe*, for appellee.