A97A1761. EPPS et al. v. GWINNETT COUNTY et al.
(499 SE2d 657)

POPE, Presiding Judge.

Plaintiff Tonya Epps was James Epps' wife. On March 1, 1994, James Epps, who was an inmate at the Gwinnett County Detention Center, died of complications resulting from bacterial endocarditis. Pursuant to his death, on September 6, 1995, plaintiff, individually and as administrator of her husband's estate, filed a multi-count complaint against defendants Gwinnett County; Jim Carsten, indi-

vidually and in his official capacity as Sheriff of Gwinnett County; Michael Barkhurst, individually and in his official capacity as the Jail Administrator of Gwinnett County; Dr. Harvey Schecter, who was the detention center's medical director; and Prison Health Services, Inc. ("PHS"), which by contract with Gwinnett County provided inmate health care at the detention center. Count 1 of the complaint alleged defendants were liable to plaintiff pursuant to 42 USC § 1983 for violating her husband's rights under the Eighth Amendment to the United States Constitution. Count 2 alleged Gwinnett County, Carsten and Barkhurst were liable for violating State statutory laws. Count 3 asserted a claim against all defendants for violating plaintiff's husband's State constitutional rights in negligently failing to provide him with adequate medical care.

All of the defendants answered plaintiff's complaint and denied liability. All the defendants also specifically asserted plaintiff's failure to file an expert affidavit pursuant to OCGA § 9-11-9.1 as an affirmative defense to Count 3. At no time, however, did plaintiff dismiss her complaint and refile to attach such an affidavit. Instead, on January 16, 1996, plaintiff amended her complaint to include Count 4, which specifically asserted a medical malpractice claim only against Schecter. Plaintiff attached an expert affidavit to this amendment. Subsequently, on February 20, 1996, plaintiff again amended her complaint to supplement the allegations of Count 4 so as to include a claim against PHS for Schecter's negligence based on the doctrine of respondeat superior. She also added Count 5, asserting a claim of professional negligence against PHS, and attached a supporting expert affidavit. Finally, plaintiff added Count 6, which claimed PHS was negligent in failing to ensure that its protocols and policies were followed during the treatment of plaintiff's husband.

Following the above amendments, the trial court granted Schecter and PHS's motion to dismiss and for summary judgment. In doing so, it dismissed all counts of the complaint with regard to Schecter and PHS. The trial court then granted Gwinnett County, Carsten and Barkhurst's motion for summary judgment as to all counts of the complaint. Plaintiff appeals from the trial court's grant of the abovementioned motions. Finding no error, we affirm.

1. Plaintiff contends the trial court erred in treating Count 3 as a professional negligence claim, and in accordance therewith, granting Schecter and PHS's motion to dismiss due to plaintiff's failure to contemporaneously file an expert affidavit with her original complaint. We disagree. Count 3 of plaintiff's complaint states that: "Defendants failed to provide James Epps with adequate medical care and as a result of their joint or combined negligence, James Epps suffered a loss of life in violation of Article I, Section I, Paragraphs I and XVII of the Constitution of the State of Georgia." As the trial court deter-

mined, this count sounds in professional medical malpractice.

OCGA § 9-11-9.1 (a) provides that "[i]n any action for damages alleging professional malpractice . . . the plaintiff shall be required to file with the complaint an affidavit of an expert competent to testify, which affidavit shall set forth specifically at least one negligent act or omission claimed to exist and the factual basis for each such claim." This Code section "applies to any action for professional malpractice by negligent act or omission, sounding in tort or by breach of contract for failure to perform professional services in accordance with the professional obligation of care." *Barr v. Johnson*, 189 Ga. App. 136, 137 (375 SE2d 51) (1988). "An expert affidavit is required to be filed where a suit alleges professional negligence and where the issue is the 'defendant's compliance with or deviation from the applicable standard of professional conduct,' which calls for ' "highly specialized expert knowledge with respect to which a layman can have no knowledge at all, and the court and jury must be dependent on expert evidence." (Cit.)' *Jordan, Jones &c., Inc. v. Wilson*, 197 Ga. App. 354, 355-356 (398 SE2d 385) [(1990)]." *Roebuck v. Smith*, 204 Ga. App. 20, 21 (418 SE2d 165) (1992).

In the instant case, Count 3 clearly alleges that plaintiff's husband did not receive *adequate medical care*. In order to prove that the medical care provided her husband was inadequate, plaintiff must rely on the knowledge of experts with regard to what the applicable standard of care is, and whether that standard was breached. This is so because such knowledge is beyond the ken of a layman. Consequently, based on the authority set forth above, she was required to file an expert affidavit with her complaint. We are not persuaded to the contrary by plaintiff's reliance on *Howard v. City of Columbus*, 219 Ga. App. 569 (466 SE2d 51) (1995). That case is distinguishable from the case at bar in that the complaint in that case alleged State constitutional violations premised on the total denial of medical attention to an inmate, not inadequate medical attention, as was alleged here.

Accordingly, we conclude that the trial court properly granted Schecter and PHS's motion to dismiss Count 3 of the complaint.

2. In light of the fact that Count 3 of the original complaint asserted a medical malpractice claim against Schecter and PHS, plaintiff's failure to dismiss her original complaint and refile it contemporaneously with the required expert affidavit is fatal to the claims of medical malpractice she later attempted to assert directly against Schecter and PHS by amendment in Counts 4 and 5, which were premised on the same factual allegations set forth in the original complaint. As the trial court determined, OCGA § 9-11-9.1 (b) contains the only exception to the contemporaneous filing requirement in professional malpractice cases. Specifically, it provides that

an expert affidavit may be supplied by supplemental pleading only in "case[s] in which the period of limitation will expire . . . within ten days of the date of filing [of the original complaint] and, because of such time constraints, the plaintiff has alleged that an affidavit of an expert could not be prepared. In such cases, the plaintiff shall have 45 days after the filing of the complaint to [file any such supplementation]."

In this case, the above exception is not applicable because the statute of limitation did not run until March 2, 1996, which was much more than ten days after the filing of the original complaint. Consequently, the trial court properly granted Schecter and PHS's motion to dismiss Counts 4 and 5 due to the fact that they were unsupported by any appropriately filed expert affidavit. See *Hodge v. Jennings Mill, Ltd.*, 215 Ga. App. 507 (451 SE2d 66) (1994).

3. The trial court also properly granted summary judgment to Schecter and PHS regarding Count 1 of the complaint. In order to recover under 42 USC § 1983 for alleged Eighth Amendment violations based on inadequate medical care, plaintiff must demonstrate deliberate indifference on the part of Schecter and PHS. A culpable state of mind on their part must be shown. *Wilson v. Seiter*, 501 U. S. 294, 299 (111 SC 2321, 115 LE2d 271) (1991). This may be done by showing that her husband's treatment was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness . . . [or that his m]edical care [was] so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care. . . ." (Citations omitted.) *Rogers v. Evans*, 792 F2d 1052, 1058 (11th Cir. 1986); see *Estelle v. Gamble*, 429 U. S. 97, 104-105 (97 SC 285, 50 LE2d 251) (1976); *Hill v. DeKalb Regional Youth Detention Center*, 40 F3d 1176, 1191 (11th Cir. 1994). However, simply asserting "that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Estelle*, 429 U. S. at 106.

Viewed in a light most favorable to plaintiff, her contention in Count 1 that Schecter and PHS were deliberately indifferent to the medical needs of her husband cannot be maintained as a matter of law. Plaintiff has failed to identify any injury or medical condition for which her husband was denied treatment or any incident in which her husband requested and was refused medical care. And the record shows that her husband did in fact receive medical care every time he completed a medical request form. In this case, the record is simply devoid of any evidence amounting to even an inference that Schecter or PHS intentionally and purposefully ignored or failed to respond to plaintiff's husband's medical needs. At best, the record evidence shows that plaintiff has a difference of opinion with

Schecter and PHS concerning the propriety of medical treatment which was rendered to her husband or what was medically necessary for his treatment. As set forth in the case authority above, this does not provide a basis for recovery against Schecter or PHS pursuant to 42 USC § 1983.

4. In light of our holding in Divisions 1 and 2 that Counts 3, 4 and 5 of plaintiff's complaint were properly dismissed with regard to Schecter and PHS, we conclude that the trial court properly granted Schecter and PHS's summary judgment motion as to Counts 4 and 5. We further conclude that the trial court properly granted summary judgment to PHS on Counts 4 and 5 based on the determination that PHS could not be held liable pursuant to those counts for any negligence on Schecter's part under the doctrine of respondeat superior because Schecter was an independent contractor. Contrary to plaintiff's contention, the record shows that Schecter was an independent contractor under the facts of this case because it shows that PHS did not control the time, method or manner in which Schecter practiced medicine, as distinguished from the right to merely require certain definite results in conformity with its contract with him. See *Gray v. Vaughn*, 217 Ga. App. 872, 874-875 (2) (460 SE2d 86) (1995); *Brown v. Coastal Emergency Svcs.*, 181 Ga. App. 893, 894-895 (2) (354 SE2d 632) (1987). We also note that Schecter's contract with PHS specifically states that he is an independent contractor.

5. Because Schecter was an independent contractor, from whom liability could not be imputed to PHS, we agree with the trial court's assessment that plaintiff has failed to demonstrate the existence of a material fact concerning any causal relationship between PHS's alleged failure to ensure that he followed its policies and procedures and the death of plaintiff's husband. Accordingly, we conclude that the trial court properly granted summary judgment to PHS on Count 6.

6. In light of the fact that Count 2 of plaintiff's complaint did not seek to hold Schecter or PHS liable, the trial court properly granted summary judgment to them on that count.

7. Plaintiff contends that the trial court improperly granted summary judgment to Gwinnett County, Carsten and Barkhurst ("Gwinnett County Defendants") with regard to Count 1 of plaintiff's complaint, which alleged that these defendants were liable under 42 USC § 1983 because their acts and omissions regarding plaintiff's husband amounted to a deliberate indifference to his serious health needs. We disagree.

(a) In order to state a claim against Gwinnett County under 42 USC § 1983, plaintiff must allege facts showing that the Gwinnett County defendants' acts or omissions, done under color of state law, resulted in the deprivation of a right, privilege, or immunity pro-

tected by the United States Constitution or the laws of the United States. *Flagg Bros., Inc. v. Brooks*, 436 U. S. 149, 156-157 (98 SC 1729, 56 LE2d 185) (1978); *Wideman v. Shallowford Community Hosp.*, 826 F2d 1030, 1032 (11th Cir. 1987). Only "when execution of a government's policy or custom [is responsible for] inflict[ing] the injury[, and thus is] the moving force of the constitutional violation [can a governmental entity be held liable]." *Monell v. Dept. of Social Svcs.*, 436 U. S. 658, 694 (98 SC 2018, 56 LE2d 611) (1978). "What is required to be proved, directly or circumstantially, is that a governing body has worked constitutional deprivation of a citizen pursuant to an impermissible or corrupt policy which is intentional and deliberate." (Citation and punctuation omitted.) *Kilgo v. Dept. of Corrections*, 202 Ga. App. 50, 51 (413 SE2d 507) (1991). "A plaintiff may not infer a policy merely because harm resulted from some interaction with a governmental entity." *Colle v. Brazos County, Texas*, 981 F2d 237, 245 (5th Cir. 1993).

In the instant case, the record is barren of any evidence of implementation of an intentionally corrupt or impermissible policy by any of the Gwinnett County defendants so as to authorize a cause of action against Gwinnett County under 42 USC § 1983. As the trial court determined, the fact that Gwinnett County contracted with PHS to provide medical care at the detention center, and that it relied on PHS to provide such care, does not amount to an intentionally corrupt or impermissible policy which would violate any citizen's Eighth Amendment rights. And there simply is no indication that any of the Gwinnett County defendants deliberately invoked a policy to interfere with PHS's provision of medical care to inmates or to deny inmates access to medical care. As previously noted, plaintiff's argument in this case is essentially a medical malpractice claim which is insufficient to establish liability under 42 USC § 1983 for an alleged Eighth Amendment violation. *Estelle*, 429 U. S. at 106.

Furthermore, the facts of this case simply fail to show any culpable conduct on the part of Carsten, as sheriff, or Barkhurst, as jail administrator, which is in any way even remotely related to any alleged inadequacy or delay in providing medical care to plaintiff's husband. Accordingly, summary judgment was properly granted to Gwinnett County as to Count 1 of plaintiff's complaint.

(b) Summary judgment as to Count 1 also was properly granted to Carsten and Barkhurst individually. Governmental officials performing discretionary functions are granted qualified immunity shielding them from the imposition of personal liability pursuant to 42 USC § 1983 "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." (Citation omitted.) *Bell v. City of Albany*, 210 Ga. App. 371, 374 (436 SE2d 87) (1993). Unless a government

official's act is so obviously wrong, in light of pre-existing law, that only a plainly incompetent official or one who was knowingly violating the law would have done such a thing, the governmental official has immunity from suit. "For the law to be clearly established to the point that qualified immunity does not apply, the law must have earlier been developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that 'what he is doing' violates federal [or constitutional] law." (Citation omitted.) *Lassiter v. Alabama A & M Univ. &c.,* 28 F3d 1146, 1149 (11th Cir. 1994).

In this case, contrary to plaintiff's contention, there is no evidence supporting a finding that Carsten or Barkhurst violated any clearly established statutory or constitutional right by merely relying on PHS to provide medical care to inmates at the detention center. Nor is there any more than speculation on plaintiff's part that Carsten and Barkhurst failed to adequately supervise PHS in the performance of its contract. Such speculation and conjecture are insufficient to create even an inference that would bar summary judgment to Carsten and Barkhurst as to Count 1 in this case. See *Taylor v. N. I. L., Inc.,* 221 Ga. App. 99, 100 (470 SE2d 491) (1996).

8. Summary judgment in favor of the Gwinnett County defendants as to Count 2 of plaintiff's complaint also was warranted. Pursuant to Count 2, plaintiff argued that these defendants were liable for violating State law. See OCGA §§ 42-4-4 and 42-5-2. While it is true that OCGA §§ 42-4-4 and 42-5-2 created an obligation on the part of the Gwinnett County defendants, that obligation was merely to provide inmates with access to medical care. What is considered proper medical care, however, is not addressed by the above Code sections. In this case, the obligation to provide access to medical care was met by contracting with PHS. And it is undisputed that every time plaintiff's husband completed a medical request form, he actually did receive medical attention. Thus, he never was denied access to medical care. Moreover, there is no evidence that any of the Gwinnett County defendants ever interfered with PHS's provision of medical care to plaintiff's husband. Under such circumstances, we conclude that there is no question of fact as to whether any of the Gwinnett County defendants are liable under State law for the death of plaintiff's husband. Clearly, they are not.

9. Due to our holding in Division 1, the Gwinnett County defendants' motion for summary judgment regarding Count 3 of the complaint was proper. So was summary judgment in their favor regarding Counts 4, 5 and 6 because those counts did not assert any claim for recovery against the Gwinnett County defendants.

*Judgments affirmed. Johnson and Blackburn, JJ., concur.*

DECIDED MARCH 6, 1998 —
RECONSIDERATION DENIED MARCH 27, 1998

*Waddell, Emerson & Buice, E. Angela Emerson, Martin L. Fierman*, for appellants.

*Meadows, Ichter & Trigg, Mark G. Trigg, Rhett E. W. Marionneaux, Jr., Melinda K. Wells, Caryl Sumner*, for appellees.