A00A2321. DAWKINS et al. v. CITY OF VILLA RICA et al.
(542 SE2d 193)

MIKELL, Judge.

This is an appeal from the grant of summary judgment to the City of Villa Rica and three of its police officers ("city defendants") arising out of a business dispute between the plaintiffs, Marlene Dawkins and Carter Linn, and their purported lessors, defendants Charles and Peggy Bynum. Plaintiffs asserted claims against the city defendants under 42 USC § 1983 alleging that the police department acquiesced in preventing the plaintiffs from reentering the premises and so deprived them of their property without due process. Holding that the police officers are entitled to qualified immunity and that no viable claim exists against the city, we affirm.

A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.[1]

So viewed, the evidence shows that on May 13, 1998, Dawkins executed a letter of intent to buy a variety store in Villa Rica from Charles and Peggy Bynum. On that day, the Bynums gave Dawkins the keys to the store, and she began operating it immediately. Within two days Dawkins had paid the Bynums $10,400, representing half of the $20,000 purchase price plus one month rent. Disputes not relevant to this appeal quickly developed between the plaintiffs and the Bynums.

---

Ten days later, on the morning of May 23, 1998 — the Saturday before Memorial Day — Peggy Bynum delivered the final proposed contract to the plaintiffs. Believing the proposal did not reflect the terms set out in the letter of intent, the plaintiffs closed the store around 1:00 p.m. and tried to contact an attorney to review the proposal. Shortly after the plaintiffs left, Charles Bynum, who owned and operated the store next door, tried to gain access to the variety store. Bynum deposed that he was concerned about protecting the remaining inventory.

Bynum could not get in because Dawkins had changed the locks. Bynum summoned a locksmith, who refused to rekey the lock without police consent. Bynum called the police, and Officer S. W. Seagraves responded. Upon learning that money had changed hands between the plaintiffs and the Bynums, Seagraves explained that the police could not get involved because the dispute was a civil matter. He warned the locksmith that rekeying the lock would constitute burglary. Bynum then requested permission to place a padlock on the door. Seagraves deposed:

> [Bynum] was worried about their stock in the store. He said, is there any problem with me putting a lock on over there. I said, I don't see any problem with that. They can contact you and you can sit down and get a mediator to handle the matter. . . . I didn't give him [permission]; I just told him that there was nothing criminal or illegal that I knew about that.

Seagraves left, and Bynum padlocked the door.

Dawkins deposed that Peggy Bynum called her around 2:00 p.m. and informed her that the police had padlocked the store. Plaintiffs proceeded to the Villa Rica Police Department, where they spoke with Sgt. W. A. Teal. He explained that the police had not padlocked the business. Sgt. Teal also reiterated that the dispute was a civil matter which would have to be handled through civil process. Finally, Sgt. Teal stated that no one would be allowed to enter the store until the matter was settled. Plaintiffs deposed that Linn requested permission to cut off the padlock, but Sgt. Teal threatened to arrest Linn if he did so. Sgt. Teal deposed that he did not recall Linn's request. Linn deposed that upon the advice of the Georgia Bureau of Investigation, he called Police Chief Dean Maddox, and the following transpired:

> I identified myself to the chief of police and [said] that I was calling about the business. The first words out of his mouth were, I thought a black man bought that business. And I said, I don't understand what that has to do with anything.

That's my wife. He goes, oh, oh, well, I didn't — I didn't mean anything. That, in my mind, set a tone right there.[2]

Chief Maddox made an appointment for the plaintiffs to come in and speak with an investigator. Upon arriving at the police station, plaintiffs filed a complaint alleging theft by deception. The complaint was referred to Captain T. Johnson, who investigated the incident and determined that no crime had been committed.

When Captain Johnson went to the Bynums' store to inform them that no charges would be filed, he saw the Bynums inside the previously padlocked variety store. Johnson asked what the Bynums were doing, and they replied that they were inventorying the property. Captain Johnson also telephoned Dawkins to inform her that the police were closing the investigation. He could not recall whether he did so before or after seeing the Bynums, but Johnson did not inform her that the Bynums had been inside the variety store. Captain Johnson deposed that the dispute between the plaintiffs and the Bynums was a civil matter over which the police lacked jurisdiction.

Linn deposed that Chief Maddox informed him that if the Bynums removed and sold merchandise that they did not own, they would be arrested for theft by conversion.

Ultimately the plaintiffs sued the Bynums, the City of Villa Rica, Chief Maddox, Sgt. Teal, and Officer Seagraves, asserting that the police permitted the Bynums to reenter the variety store, thereby enabling the Bynums to appropriate the plaintiffs' property. Plaintiffs claim the police unlawfully dispossessed them without a warrant and thus violated 42 USC § 1983. The city defendants moved for summary judgment, and the plaintiffs moved for partial summary judgment as to the city defendants' liability. The trial court granted the city's motion and denied the plaintiffs' motion. The plaintiffs appeal.

1. 42 USC § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured. . . .

Accordingly, to survive summary judgment in a § 1983 action, a plaintiff must demonstrate the existence of genuine issues of material fact showing that the defendants' acts or omissions, performed

---

[2] Linn is white. Dawkins is black.

under color of state law, resulted in the deprivation of a right, privilege, or immunity protected by the United States Constitution or the laws of the United States.[3] Here, plaintiffs contend that the police deprived them of their property without due process, thereby violating the Fourteenth Amendment.[4]

Plaintiffs correctly assert that 42 USC § 1983 provides a cause of action to an individual who has been deprived of a property right by a government official without due process.[5] However, the statute also provides qualified immunity from personal liability to government officials performing discretionary functions as long as the officials' conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[6] "Unless a government agent's act is so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor has immunity from suit."[7] "In all but the most exceptional cases, qualified immunity protects government officials performing discretionary functions from the burdens of civil trials and from liability for damages."[8] This is not an exceptional case. It is apparent from the evidence in the record before us that the actions of the police amounted to a good faith effort to keep the peace and maintain the status quo while the plaintiffs and the Bynums pursued civil process. Both Chief Maddox and Officer Seagraves advised the parties to sit down with a mediator. Similarly, Sgt. Teal advised the plaintiffs to contact an attorney and settle the matter. Plaintiffs' testimony that Sgt. Teal instructed them not to break the padlock Bynum had placed on the door evinces an attempt to keep the peace, not to deprive the plaintiffs of their property.

Nor can we conclude that Officer Seagraves' failure to prevent Bynum from padlocking the store was tantamount to a warrantless dispossession, as plaintiffs argue. Although the better practice may have been to refrain from responding to Bynum's inquiry about placing a padlock on the door, the remark cannot be construed as a dispossession. Officer Seagraves did not permit the Bynums to rekey

---

[3] *Flagg Bros., Inc. v. Brooks*, 436 U. S. 149, 156-157 (98 SC 1729, 56 LE2d 185) (1978); *Wideman v. Shallowford Community Hosp.*, 826 F2d 1030, 1032 (11th Cir. 1987); *Epps v. Gwinnett County*, 231 Ga. App. 664, 668-669 (7) (a) (499 SE2d 657) (1998).

[4] U. S. Const. Amend. 14; Ga. Const. 1983, Art. I, Sec. I, Par. I.

[5] *Maxwell v. Mayor &c. of Savannah*, 226 Ga. App. 705, 707 (1) (487 SE2d 478) (1997).

[6] (Citations and punctuation omitted.) *Thomas v. Holt*, 221 Ga. App. 345, 347-348 (1) (471 SE2d 300) (1996).

[7] *Maxwell*, supra at 707 (1).

[8] (Citation and punctuation omitted.) *Bd. of Commrs. of Effingham County v. Farmer*, 228 Ga. App. 819, 823 (2) (493 SE2d 21) (1997).

the lock or to enter the premises.[9] In any event, Bynum's deposition testimony reveals that Officer Seagraves made the comment in the context of explaining that the police enforce criminal laws, but have no jurisdiction in civil matters.

Finally, the plaintiffs' allegation that the police permitted the Bynums to reenter the variety store and appropriate the plaintiffs' property is belied by Linn's deposition testimony that Chief Maddox said the Bynums would be arrested if they took the plaintiffs' property. Accordingly, plaintiffs have failed to sustain their burden of showing that genuine fact issues remain regarding whether the police deprived them of a constitutionally protected right, and the police are entitled to qualified immunity.

2. Plaintiffs' claim against the city under 42 USC § 1983 is likewise without merit. It is only "when execution of a government's policy or custom is responsible for inflicting the injury, and thus is the moving force of the constitutional violation can a governmental entity be held liable."[10] "What is required to be proved, directly or circumstantially, is that a governing body has worked constitutional deprivation of a citizen pursuant to an impermissible or corrupt policy which is intentional and deliberate."[11] "A plaintiff may not infer a policy merely because harm resulted from some interaction with a governmental entity."[12]

Here, not only have plaintiffs failed to demonstrate any injury causally related to their interaction with the police department, "the record is [devoid] of any evidence of implementation of an intentionally corrupt or impermissible policy by any of the [city] defendants so as to authorize a cause of action against [Villa Rica] under 42 USC § 1983."[13]

*Judgment affirmed. Pope, P. J., and Miller, J., concur.*

DECIDED NOVEMBER 14, 2000.

*Herald J. A. Alexander*, for appellants.
*McCullough Sherrill, Kirk R. Fjelstul, Michael H. Hilliard, Caryl Sumner*, for appellees.

---

[9] Cf. *Owens v. BarclaysAmerican/Mtg. Corp.*, 218 Ga. App. 160 (460 SE2d 835) (1995) (agent of owner removed plaintiff's possessions and changed the locks).

[10] (Punctuation omitted.) *Epps, supra* at 669 (7) (a), citing *Monell v. Dept. of Social Svcs. &c.*, 436 U. S. 658, 694 (98 SC 2018, 56 LE2d 611) (1978).

[11] (Citation and punctuation omitted.) *Kilgo v. Dept. of Corrections*, 202 Ga. App. 50, 51 (413 SE2d 507) (1991).

[12] *Colle v. Brazos County, Texas*, 981 F2d 237, 245 (5th Cir. 1993).

[13] *Epps, supra* at 669 (7) (a).