**FIFTH DIVISION**
**DILLARD, P. J.,**
**REESE and BETHEL, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**February 13, 2017**

# In the Court of Appeals of Georgia

A16A1582. ODUOK v. FULTON DEKALB HOSPITAL
AUTHORITY et al.

REESE, Judge.

Proceeding pro se, Inyang Peter Oduok sued the Fulton DeKalb Hospital Authority d/b/a Grady Memorial Hospital ("Grady Hospital"), Emory University ("Emory"),[1] and several healthcare providers for damages allegedly arising from a medical procedure. The trial court dismissed Oduok's complaint for want of prosecution and failure to comply with the expert affidavit requirement in OCGA § 9-11-9.1 (a). Oduok appeals, and for reasons that follow, we affirm in part, vacate in part, and reverse in part, and remand the case with direction.

---

[1] According to the defendants, the proper name for this party is Emory University Hospital, rather than Emory University. For ease of discussion, we will refer to this defendant as "Emory."

We review a trial court's ruling on a motion to dismiss de novo, construing the complaint and its allegations in the light most favorable to the plaintiff.[2] So viewed, the complaint alleges that in July 2013, Oduok visited a pulmonary clinic operated by Grady Hospital and Emory to follow up on medical tests that showed a mass on his right lung. Oduok underwent a CT scan and, based on those results, a physician, Dr. Ahmed Khan, recommended that Oduok have a CT-guided lung biopsy to determine whether the mass was cancerous. Although Oduok was certain that he did not have cancer, he submitted to the biopsy on August 14, 2013.

According to the complaint, Khan and another physician, Dr. Eric Honig, ordered that Oduok be admitted to the hospital following the biopsy to guard against risks associated with a pneumothorax or punctured lung. Oduok, however, was discharged and sent home two hours after the procedure. Shortly after he returned home, Oduok's lung collapsed, and he was rushed to the hospital for emergency surgery.

On July 30, 2015, Oduok filed his complaint against Grady Hospital, Emory, Dr. Michael Osipow, Dr. Nicholas Levi Henson, Dr. Ahmed Khan, and Dr. Kencliff

---

[2] *Hobbs v. Great Expressions Dental Centers of Ga.*, 337 Ga. App. 248 (786 SE2d 897) (2016); *Jensen v. Engler*, 317 Ga. App. 879 (733 SE2d 52) (2012).

2

Palmer, alleging claims for: (1) intentional misrepresentation; (2) violation of the Georgia and federal Racketeer Influenced and Corrupt Organizations ("RICO") Acts;[3] (3) breach of contract; (4) breach of warranty; (5) promises made without intention to perform; (6) intentional infliction of emotional distress; (7) negligent hiring, retention, and supervision; and (8) negligence. Grady Hospital, Emory, and Osipow[4] subsequently moved to dismiss the complaint. Asserting that each claim rested upon a medical malpractice theory, they argued that Oduok was required – but failed – to support his claims with an expert affidavit pursuant to OCGA § 9-11-9.1 (a). The motion to dismiss also noted that the other defendants – Henson, Khan, and Palmer – had not been served with the complaint.

On October 1, 2015, the trial court held a no-service/default calendar call to address service issues relating to Henson, Khan, and Palmer, as well as Emory.[5] Oduok failed to appear, and the trial court dismissed these defendants for want of

---

[3] See 18 USC § 1961 et seq; OCGA § 16-14-1 et seq.

[4] Osipow was the attending radiologist responsible for overseeing the lung biopsy.

[5] The service issues relating to Emory are unclear. Unlike Henson, Khan, and Palmer, who apparently were never served, Emory admitted in the brief accompanying its motion to dismiss for failure to comply with OCGA § 9-11-9.1 (a) that Oduok served it with the complaint.

3

prosecution, leaving only Grady Hospital and Osipow in the suit. A few months later, the trial court addressed the motion to dismiss filed pursuant to OCGA § 9-11-9.1 (a). Concluding that Oduok's failure to file an expert affidavit was "fatal to his claims," the trial court dismissed the complaint against Grady Hospital and Osipow. Oduok moved the trial court to set aside or reconsider both dismissal orders and also requested that the trial judge recuse himself. The trial court denied Oduok's motions, and this appeal followed.

1. We first consider the trial court's order dismissing the complaint against Grady Hospital and Osipow. Pursuant to OCGA § 9-11-9.1 (a), a claim alleging medical malpractice must be accompanied by "an affidavit of an expert competent to testify, which affidavit shall set forth specifically at least one negligent act or omission claimed to exist and the factual basis for each such claim."[6] Failure to comply with the affidavit requirement subjects a malpractice claim to dismissal.[7]

---

[6] OCGA § 9-11-9.1 (a).

[7] *Crawford v. Johnson*, 227 Ga. App. 548, 551 (2) (a) (489 SE2d 552) (1997). We note that, on appeal, Oduok argues that, even if his allegations sound in professional negligence, they do not require an expert affidavit because the defendants' actions were so "obviously negligent" that expert medical testimony would not be needed. OCGA § 9-11-9.1, however, imposes a pleading requirement that must be followed. See id. The cases Oduok cites to support his argument address the evidence needed to overcome a summary judgment motion, not the OCGA § 9-11-

As we have noted, however, "not every suit which calls into question the conduct of one who happens to be a medical professional is a medical malpractice action."[8] We look to the substance of a claim in deciding whether OCGA § 9-11-9.1 (a) applies.[9] The key factor "is the existence or absence of allegations that the defendant-professional has rendered negligent professional services."[10] Ultimately, when "the failure to do a thing, or the negligent doing of it, is proved by reliance upon a general standard of care or by rules of procedure used by others competently performing the same service, it is a 'professional' act or practice."[11] With these standards in mind, we address each of Oduok's claims.

---

9.1 (a) pleading requirement. See, e.g., *Landers v. Ga. Baptist Med. Ctr.*, 175 Ga. App. 500, 501-502 (1) (333 SE2d 884) (1985); *Terrell v. West Paces Ferry Hosp.*, 162 Ga. App. 783, 783-784 (1) (292 SE2d 433) (1982).

[8] *Atlanta Women's Health Group v. Clemons*, 287 Ga. App. 426, 427 (651 SE2d 762) (2007) (footnote omitted).

[9] Id.

[10] *Crawford*, supra (citation and punctuation omitted).

[11] Id. (citation omitted).

(a) *Counts 1, 2, and 6.* Liberally construed,[12] Counts 1, 2, and 6 of the complaint appear to allege intentional torts, referring to conduct and statements made by defendants other than Grady Hospital and Osipow. Each claim, however, generally references "defendants," and the complaint alleges that all defendants "schemed with Grady [Hospital] . . . and intentionally caused its doctors to conduct [a] bogus biopsy on plaintiff against his will to collect a huge sum of money from plaintiff's insurance." Specifically, Count 1 asserts that one or more defendants intentionally made false and misleading representations to Oduok regarding his health care providers' qualifications to perform the biopsy and the safety of that procedure. Count 2 alleges RICO violations stemming from these purported falsehoods, as well as other intentional and coercive conduct. And Count 6 asserts a claim for intentional infliction of emotional distress relating to the defendants' allegedly "outrageous conduct[]" before and after the biopsy.

The affidavit requirement in OCGA § 9-11-9.1 applies to professional negligence allegations.[13] It does not reach claims "for *intentional* misconduct or acts

---

[12] See *Health Mgmt. Assoc. v. Bazemore*, 286 Ga. App. 285, 288-289 (648 SE2d 749) (2007) (liberally construing allegations in the complaint).

[13] *Hobbs*, supra at 248.

6

against a professional, including claims for fraud and misrepresentation."[14] Accordingly, to the extent Oduok asserts that Grady Hospital and Osipow engaged in or are liable for the intentional conduct alleged in Counts 1, 2, and 6, these claims did not require an expert affidavit.[15] Accordingly, the trial court erred in dismissing these claims against Grady Hospital and Osipow.

(b) *Count 3.* In Count 3, Oduok asserts a breach of contract claim. The basis for this count is not clear, nor is it clear against which defendants Oduok intended to assert this particular claim. Construed liberally, however, Count 3 appears to allege that the defendants – arguably including Grady Hospital and Osipow – breached an

---

[14] Id. at 249 (emphasis supplied).

[15] See *Labovitz v. Hopkinson*, 271 Ga. 330, 337 (519 SE2d 672) (1999) (claim that attorneys "committed intentional acts which caused [the claimant] harm [did] not require [an OCGA] § 9-11-9.1 expert affidavit"); *Hobbs*, supra (trial court erred in dismissing claim alleging intentional misrepresentation by health care provider for failure to file expert affidavit); *Crawford*, supra at 552 (2) (b) (no expert affidavit required for claims alleging fraud, conversion, and other conduct not involving negligence). Compare *Fortson v. Freeman*, 313 Ga. App. 326, 327-328 (721 SE2d 607) (2011) (expert affidavit required to support claim that attorney engaged in *negligent* misrepresentation regarding legal advice).

agreement (1) to properly perform the biopsy, and (2) to hospitalize Oduok after the procedure to guard against complications.[16]

Again, OCGA § 9-11-9.1 (a) applies to allegations involving professional malpractice, including breach of contract claims.[17] "The determinative factor is whether the task in question requires the exercise of professional judgment and skill."[18] If the contract claim invokes a "failure to perform professional services in accordance with the applicable standard of care," an affidavit must be filed.[19] Otherwise, no affidavit is needed.[20]

---

[16] The complaint also alleges that defendant Henson breached his oral agreement to "accept full responsibility" if Oduok's lung collapsed and also failed to reduce that agreement to writing, as promised. These allegations do not implicate Grady Hospital or Osipow.

[17] *Hobbs*, supra at 248.

[18] *Nash v. Studdard*, 294 Ga. App. 845, 853 (5) (670 SE2d 508) (2008) (citation and punctuation omitted).

[19] *Hobbs*, supra at 248 (citation omitted).

[20] *Nash*, supra; *Hodge v. Jennings Mill*, 215 Ga. App. 507, 508 (451 SE2d 66) (1994) ("[T]he affidavit requirements of OCGA § 9-11-9.1 are limited to those claims for professional malpractice by negligent act or omission, sounding in tort or by breach of contract for failure to perform professional services [in] accordance with the professional obligation of care.") (citation, punctuation, and emphasis omitted).

8

Given these standards, the trial court properly dismissed Count 3 to the extent it alleges that Grady Hospital and Osipow breached a contract by negligently performing or "botching" the biopsy. Such allegations invoke professional judgment and skill, bringing them within OCGA § 9-11-9.1 (a).[21]

Similarly, Oduok's apparent claim that Grady Hospital and Osipow breached an agreement to admit him to the hospital also depends on whether the failure to hospitalize Oduok breached the applicable standard of medical care.[22] The trial court, therefore, properly dismissed this claim pursuant to OCGA § 9-11-9.1 (a).[23]

(c) *Count 4*. Count 4 alleges that the defendants breached a warranty to Oduok "by providing [him] a botched biopsy and collapsed lungs that almost resulted in . . . loss of his life." The claim questions the adequacy of Oduok's medical treatment,

---

[21] See *Nash*, supra (trial court erred in refusing to dismiss a contract claim involving exercise of professional judgment for failure to comply with OCGA § 9-11-9.1 (a)).

[22] See *Epps v. Gwinnett County*, 231 Ga. App. 664, 666 (1) (499 SE2d 657) (1998) (expert affidavit must be filed "where the issue is the defendant's compliance with or deviation from the applicable standard of professional conduct, which calls for highly specialized expert knowledge with respect to which a layman can have no knowledge at all, and the court and jury must be dependent on expert evidence") (citation and punctuation omitted).

[23] See id.

particularly the professional skill and judgment exercised by the defendants. It thus falls within OCGA § 9-11-9.1 (a) and was properly dismissed by the trial court.[24]

(d) *Count 5*. In Count 5, Oduok alleges that defendant Henson agreed to reduce certain promises to writing, but failed to do so and "had no intention to perform" such promises. Although the title of Count 5 indicates that it was asserted against "Henson and Entity Defendants," the substantive allegations do not mention any defendant other than Henson or set forth any basis for liability against another defendant. Even construed liberally, Count 5 does not allege a claim against Grady Hospital or Osipow and, thus, the trial court properly dismissed this claim as to them.

(e) *Count 7*. Count 7 focuses on negligent hiring, retention, and supervision. To the extent this count alleges that Grady Hospital and/or Osipow are vicariously liable for the professional negligence of Oduok's treating healthcare providers, the trial court properly dismissed the claims for failure to comply with OCGA § 9-11-9.1 (a).[25] Any claims involving negligent supervision over the *intentional* conduct of

---

[24] See *Epps*, supra at 665-666 (1); *Sparks v. Kroger*, 200 Ga. App. 135, 136 (2) (407 SE2d 105) (1991) (trial court properly dismissed breach of warranty claim against pharmacist for failure to comply with OCGA § 9-11-9.1 where claim alleged that pharmacist improperly filled a prescription).

[25] See *Bonner v. Peterson*, 301 Ga. App. 443, 445 (1) (687 SE2d 676) (2009) (claim that medical doctor failed to properly supervise or train another physician

10

these professionals, however, would not require an expert affidavit.[26] The trial court, therefore, erred in dismissing claims against Grady Hospital and Osipow based on a healthcare provider's intentional conduct.[27]

(f) *Count 8.* Oduok's final count sounds in negligence, references the "standard of care," and alleges that the defendants failed to exercise sufficient skill in performing the biopsy and treating him following the procedure. These allegations clearly allege professional negligence, requiring an expert affidavit under OCGA § 9-11-9.1 (a).[28] Dismissal of Count 8, therefore, was proper.[29]

---

called into question the doctor's professional judgment and was thus a professional negligence allegation requiring compliance with OCGA § 9-11-9.1); *Upson County Hosp. v. Head*, 246 Ga. App. 386, 390 (1) (540 SE2d 626) (2000) ("[T]o the extent that [plaintiff's] allegation asserts a claim against the hospital based upon the negligent act of a professional using his professional judgment and skill, then [plaintiff's] failure to file a 9.1 expert affidavit is fatal to her claim."); *Minster v. Pohl*, 206 Ga. App. 617, 621, n. 1 (4) (426 SE2d 204) (1992) ("OCGA § 9-11-9.1 applies to a hospital when it is sued under a theory of respondeat superior for the *professional negligence* of its employee nurse.") (emphasis supplied).

[26] See *Labovitz*, supra (expert affidavit requirement does not apply to allegations based on intentional torts).

[27] See id.

[28] See *Epps*, supra.

[29] Id.

In summary, as to the defendants Grady Hospital and Osipow, we affirm the dismissal of Counts 3, 4, and 8, due to Oduok's failure to comply with the affidavit requirements of OCGA § 9-11-9.1 (a), and we reverse the dismissal of Counts 1, 2, and 6, based upon our conclusion that the claims did not require compliance with the affidavit requirements of OCGA § 9-11-9.1 (a). Regarding Count 5, we affirm the trial court's dismissal as the count does not assert a claim against either Grady Hospital or Osipow. As to Count 7 of the complaint, we affirm the dismissal of the claims to the extent that they alleged that Grady Hospital and/or Osipow were vicariously liable for the professional negligence of the healthcare providers under their supervision, but we reverse the dismissal of the claims to the extent that they seek to hold Grady Hospital and/or Osipow liable for their negligent supervision over the intentional conduct of those healthcare providers.

2. We now turn to the trial court's order dismissing defendants Emory, Henson, Kahn, and Palmer from the suit based upon want of prosecution after Oduok failed to appear at the no-service/default calendar call. In a motion to set aside or to reconsider the dismissal, Oduok asserted that he had not received notice of the calendar call. The trial court denied the motion, concluding that proper notice had been mailed to Oduok and published in the county's official legal organ.

12

(a) A trial court "may dismiss without prejudice any civil action, or where appropriate, any pleading filed on behalf of any party upon the failure to properly respond to the call of the action for trial or other proceeding."[30] Dismissal for failure to attend a calendar call, however, is proper only if the court provided the absent party with notice of the proceeding.[31]

As an initial matter, publication of the default calendar did not provide sufficient notice to Oduok, who is a pro se party. Although publication may constitute notice in certain cases,[32] Georgia Uniform Superior Court Rule (USCR) 8.3 explicitly requires that "[p]ro se parties must be notified [of a trial calendar] by regular mail." We find that this requirement applies to the no-service/default calendar at issue

---

[30] Uniform Superior Court Rule (USCR) 14. See also *Maupin v. Vincent*, 245 Ga. App. 635, 635-636 (1) (538 SE2d 539) (2000) (trial court has authority to dismiss claim without prejudice for failure to appear at pre-trial hearing).

[31] *Edens v. O'Connor*, 238 Ga. App. 252 (1) (519 SE2d 691) (1999); see also *Randall v. Randall*, 274 Ga. 107, 109 (2) (549 SE2d 384) (2001) ("Compliance with the notice requirement is mandatory, not discretionary.") (citation omitted).

[32] See *Hammonds v. Sherman*, 277 Ga. App. 498, 498-499 (627 SE2d 110) (2006). But see *Edens*, supra ("Publication of notice of a motion hearing date is not, by itself, sufficient.") (punctuation omitted).

13

here.[33] The question becomes, therefore, whether the trial court gave Oduok proper written notice by mail.

The trial court asserted that it had mailed notice of the calendar to Oduok on September 11, 2015, at the post office box listed in the complaint. We typically "take the trial court at its word" in this regard.[34] But the record contains evidence that the trial court did *not* send the notice to the proper post office box. Specifically, the record contains a photocopy of an envelope with the return address of the Fulton County Superior Court; the face of the envelope is marked "Returned to Sender/Attempted-Not Known." There is a line drawn through the intended recipient's address, which is a different address than that provided by Oduok in his complaint. There is also a hand-written note on the envelope which says "Note: Placed in wrong P. O. Box."

---

[33] See OCGA §§ 9-11-6 (d) (generally, written notice of a motion hearing must "be served not later than five days before the time specified for the hearing"); 9-11-5 (b) ("Service upon the attorney or upon a party shall be made by delivering a copy to the person to be served or by mailing it to the person to be served at the person's last known address or, if no address is known, by leaving it with the clerk of the court.").

[34] *Atlanta Bus. Video v. Fantrace, LLC*, 324 Ga. App. 559, 560 (751 SE2d 169) (2013) (footnote omitted).

Generally, "[t]here is a presumption that the clerk gave proper notice of the calendar call."[35] In this case, however, the record contains evidence that rebuts that presumption, and it is unclear whether the trial court considered this evidence. Accordingly, we vacate the trial court's order dismissing the defendants for want of prosecution and remand for further consideration of whether Oduok received the required written notice of the calendar call.[36]

(b) Although the order dismissing Emory for want of prosecution must be vacated, the record shows that Emory also joined in the motion to dismiss the complaint based upon Oduok's failure to comply with the affidavit requirements of OCGA § 9-11-9.1 (a). As shown in Division 1, supra, we concluded that the trial

---

[35] *Hammonds*, supra at 498.

[36] See USCR 8.3; *Edens*, supra (trial court erred in refusing to set aside order entered following hearing held without notice to complaining party); *King v. Bd. of Regents*, 215 Ga. App. 570, 571 (451 SE2d 482) (1994) (trial court erred in refusing to set aside order dismissing complaint entered after plaintiff failed to attend hearing about which he had insufficient notice). Compare *Atlanta Bus. Video*, supra at 560-561 (trial court did not err in dismissing complaint after plaintiff failed to appear at calendar call; although plaintiff's attorney asserted that he did not receive notice of the proceeding, the trial court found that notice had been properly mailed, the record did not show otherwise, and other factors indicated that counsel knew about the calendar call); *Hammonds*, supra at 498-499 (dismissal based on plaintiff's absence from calendar call proper where plaintiff failed to show that she did not receive notice).

15

court properly dismissed various professional negligence claims against Grady Hospital and Osipow on that basis.

"[W]e will affirm the trial court's dismissal of the action if it is right for any reason."[37] Accordingly, having concluded that Oduok's failure to file an expert affidavit was fatal to Counts 3, 4, and 8 of his complaint, as well as to the professional negligence claims asserted in Count 7, we likewise affirm the dismissal of those claims against Emory.[38]

3. Finally, Oduok argues that the trial judge erred in refusing to recuse himself from the case. Recusal motions are governed by USCR 25, which requires that the motion be accompanied by an affidavit that "fully assert[s] the facts upon which the motion is founded."[39] Oduok did not submit an affidavit with his motion. Although he filed an unsworn "declaration" purporting to set forth facts supporting recusal, the

---

[37] *Worley v. Winter Constr. Co.*, 304 Ga. App. 206, 207 (1) (695 SE2d 651) (2010) (footnote omitted).

[38] See id.

[39] USCR 25.1.

declaration was legally insufficient to satisfy Rule 25.[40] Accordingly, the trial court properly denied the motion to recuse.[41]

*Judgment affirmed in part, vacated in part, and reversed in part, and case remanded with direction. Dillard, P. J., and Bethel, J., concur.*

---

[40] See *Post v. State*, 298 Ga. 241, 243 (1) (779 SE2d 624) (2015) ("To be legally sufficient, an affidavit accompanying a recusal motion must contain the three elements essential to a complete affidavit: (a) a written oath embodying the facts as sworn by the affiant; (b) the signature of the affiant; and (c) the attestation by an officer authorized to administer the oath that the affidavit was actually sworn by the affiant before the officer.") (citation and punctuation omitted); *Savage v. State*, 263 Ga. App. 180, 184 (5) (587 SE2d 294) (2003) (absence of affidavit is fatal to motion to recuse); *Dodson v. Dean*, 256 Ga. App. 4, 6-7 (567 SE2d 348) (2002) (affidavit that was not notarized was legally insufficient to support motion to recuse).

[41] See *Savage*, supra; *Dodson*, supra.