**FOURTH DIVISION**
**DOYLE, P. J.,**
**ANDREWS and BOGGS, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

July 11, 2012

# In the Court of Appeals of Georgia

A12A0352. GRAHAM et. al. v. COBB COUNTY et. al.          DO-016

DOYLE, Presiding Judge.

This case arises from the death of an inmate, Justin Graham, in the Cobb County Jail. The decedent's family, led by his twin brother, Jason Graham, filed claims against several defendants, including Cobb County, Cobb County Sheriff Neil Warren in his official and individual capacities, and Sandra Brocker, the medical contract compliance administrator at the Cobb County Adult Detention Center, in her official and individual capacities, Quest Medical, LLC, and WellStar Health Systems, Inc. ("WellStar"). The trial court denied Graham's motion to compel and granted in

part summary judgment against Graham, who now appeals.[1] For the reasons that follow, we affirm.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.[2]

So viewed, the record establishes that the Cobb County Sheriff's Office ("CCSO") contracted with WellStar to provide medical care to detainees at the Cobb County Jail. The contract explicitly stated that "there [were] no third[-]party beneficiaries to th[e] Agreement," and CCSO did not intend to exercise control over clinical decisions made by WellStar's physicians, although WellStar was required to follow policies set forth by CCSO. Brocker's role was to manage and oversee the medical facility at the jail.

---

[1] The trial court denied summary judgment to various defendants who are not parties to this appeal.

[2] *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

On May 18, 2006, at 2:22 a.m., Justin was arrested for driving under the influence of alcohol after registering blood alcohol levels of .274 and .283 on a breath test. He was transported to the jail, and after being checked at the infirmary, he was sent to general population.

Later that day, at about 5:05 p.m., Graham suffered a seizure as he was being escorted by guards, who called a "Code Blue" and had him transported to the infirmary. Justin spent the night in the infirmary, where he was treated with alcohol detoxification and anti-seizure medications and found to have a high bilirubin level of 3.9 mg.[3] After a few days of treatment, Dr. Clarence Hendrix, a doctor in the infirmary, deemed Justin's treatment for alcohol withdrawal successful and sent him back to the general population on May 22, with instructions to continue medication and follow up in two weeks.

On May 23, Justin complained of back pain and constipation, and an infimary nurse observed him to have a yellow tinge in his eyes and upper torso. Infirmary doctors ordered blood work and a hepatitis panel. This lab work evinced a bilirubin level of 17.0 mg, which could indicate liver damage and impending liver failure.

---

[3] The reference interval for normal bilirubin levels is 0.1 to 1.2 mg.

On May 25, Justin made another request for medical treatment. Later that day, guards called another "Code Blue" on him after he fainted, and he was taken by wheelchair to the infirmary. During this visit, a nurse examined Justin but did not contact a physician. On May 28, Justin showed some improvement, but his bilirubin level was still elevated at 16.5 mg, he was still jaundiced, and he still had an elevated pulse rate and other elevated lab values. Nevertheless, Justin was returned to general population. Over the following three days, he continued to complain of constipation, was given medication and vitamins, and had more blood tests scheduled.

On June 2, Graham had another blood test done, which returned a bilirubin level of 27.5 mg, indicating progressing liver disease and possible failure. By June 5, doctors observed that Justin was yellow and his abdomen was swollen, and Dr. Hendrix ordered him to be transported to the WellStar Cobb Hospital emergency room. Justin was diagnosed at the hospital with end stage liver disease, and he was placed on life support nine days later and, thereafter, died on July 7, 2006, at age 25 of complications from liver failure, including renal failure and myocardial infarction.

After hearings on various motions, the trial court granted summary judgment as to Cobb County, Sheriff Warren, Brocker, and Quest Medical and denied Graham's motion to compel. This appeal followed.

4

1. Graham argues that the trial court erred by granting summary judgment to Cobb County, Sheriff Warren, and Brocker. We disagree.

(a) *Federal claims.*

Graham's complaint alleged that the above-listed defendants failed to provide Justin with adequate medical care, thereby leading to his death in violation of the Eighth Amendment of the U.S. Constitution.

Under 42 USC § 1983, civil liability is imposed upon one "who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws. . . ."[4] The first inquiry in any § 1983 suit, therefore, is whether the plaintiff has been deprived of a right "secured by the Constitution and laws."[5]

To state an Eighth Amendment violation for inadequate medical care, a plaintiff must show that his medical treatment was "so grossly incompetent,

---

[4] (Punctuation and emphasis omitted.) *Baker v. McCollan*, 443 U. S. 137, 140 (99 SC 2689, 61 LE2d 433) (1979).

[5] Id.

5

inadequate, or excessive as to shock the conscience or be intolerable to fundamental fairness or [that] the medical care is so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care."[6] Conduct that does not purport to be punishment at all, such as medical care, must involve more than lack of due care in order to be cruel and unusual punishment; it requires obduracy and wantonness, not inadvertence or error in good faith, to violate the prohibitions of the Cruel and Unusual Punishments Clause.[7] Deliberate indifference to serious medical needs of prisoners constitutes an Eighth Amendment violation, while an inadvertent failure to provide adequate medical care does not.[8] Moreover, this Court has stated that to show an Eighth Amendment claim, "an inmate must show not only the infliction of cruel and unusual punishment[,] but also must show a culpable state of mind on the part of prison officials."[9]

---

[6] *Merritt v. Athens Clarke County*, 233 Ga. App. 203, 204-205 (1) (504 SE2d 41) (1998), citing *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986).

[7] See *Alford v. Osei-Kwasi*, 203 Ga. App. 716, 718-719 (2) (418 SE2d 79) (1992), citing *Whitley v. Albers*, 475 U. S. 312, 319 (106 SC 1078, 89 LE2d 251) (1986).

[8] See *Estelle v. Gamble*, 429 U. S. 97 (97 SC 285, 50 LE2d 251) (1976).

[9] (Punctuation and emphasis omitted.) *Merritt*, 233 Ga. App. at 208 (3).

Even if all of Graham's allegations are taken to be true, they do not show that Sheriff Warren and Brocker wantonly denied Justin medical care. Graham points to several facts that could show a difference of opinion with the defendants concerning the propriety of medical treatment rendered to Justin, such as a failure to send him to the hospital when his bilirubin levels failed to stabilize. Nevertheless, nothing in Graham's allegations or in the record shows wantonness, deliberate indifference, or a culpable state of mind on the part of Warren or Brocker.[10] Indeed, in their brief, Graham repeatedly complains of inadequate medical care; this Court has previously stated that such a claim sounds in medical malpractice and is inadequate to maintain a § 1983 action.[11]

In *Epps*, this Court required a showing of a denial or refusal of treatment in order to show deliberate indifference.[12] In granting summary judgment to the

---

[10] Compare with *Howard v. City of Columbus*, 239 Ga. App. 399, 408 (1) (a) (iii) (521 SE2d 51) (1999) (physical precedent only) ("The fact that ten to thirteen inmates have died from diabetes while in custody between 1980 and 1992 is some evidence of deliberate indifference to providing appropriate medical care and treatment for diabetics.").

[11] See *Epps v. Gwinnett County*, 231 Ga. App. 664, 666, 668 (3) (499 SE2d 657) (1998).

[12] See id. at 667 (3).

7

defendants, this Court noted that "the record shows that [the decedent] did in fact receive medical care every time he completed a medical request form."[13] Likewise, Graham concedes that Justin was diagnosed and treated, and the record further indicates that he was treated and given medication whenever he fainted or complained of back pain or constipation. . Consequently, the evidence does not support a finding of deliberate indifference on the part of Sheriff Warren or Brocker.[14]

Furthermore, Graham's contention that Sheriff Warren or Brocker breached his duty by delegating supervisory authority to WellStar is incorrect. In *Epps*, this Court recognized that a local government contracting with a third party to provide medical care at a detention center "does not amount to an intentionally corrupt or impermissible policy which would violate any citizen's Eighth Amendment rights."[15]

Accordingly, the trial court properly granted summary judgment to Cobb County, Sheriff Warren, and Brocker on the § 1983 claims.

(b) *State law claims.*

---

[13] Id.

[14] Compare with *Howard*, 239 Ga. App. at 406-407 (1) (a) (ii) (policy in jail that doctors and nurses failed to provide sufficient care for budget reasons was sufficient evidence to support §1983 claim against sheriff).

[15] *Epps*, 231 Ga. App. at 669 (7) (a).

Graham also argues that the trial court erred by finding that defendants Cobb County, Sheriff Warren, and Brocker are immune from his asserted state law tort and contract claims. We disagree.

(i) *Sovereign Immunity*

A governmental unit having custody of an inmate has the responsibility to furnish any needed medical and hospital attention.[16] Nevertheless, "[a] county is not liable to suit . . . unless made so by statute."[17] While OCGA § 42-5-2 (a) imposes upon the county the duty and cost of medical care for inmates in its custody, it does not waive sovereign immunity of the county or its agents or employees.[18] Thus, the trial court correctly determined that the state law claims made against Cobb County and against Sheriff Warren and Brocker in their official capacities are barred.

(ii) *Official Immunity*

Under the doctrine of official, or qualified, immunity, law enforcement officers may be personally liable for negligent actions taken in the performance of ministerial functions, but are immune from

---

[16] See OCGA § 42-5-2 (a).

[17] OCGA § 36-1-4.

[18] See *Gish v. Thomas*, 302 Ga. App. 854, 862-863 (4) (691 SE2d 900) (2010); *Howard*, 239 Ga. App. at 410 (2) (a).

9

personal liability for discretionary acts taken within the scope of their official authority and performed without wilfulness, malice, or corruption. Stated succinctly, a public officer or employee may be personally liable only for ministerial acts negligently performed or acts performed with malice or an intent to injure. The rationale for this immunity is to preserve the public employee's independence of action without fear of lawsuits and to prevent a review of his or her judgment in hindsight.[19]

"A ministerial act is commonly one that is simple, absolute, and definite . . . and requiring merely the execution of a specific duty. A discretionary act calls for the exercise of personal deliberation and judgment . . . ."[20] "The provision of adequate medical attention is a ministerial act by the sheriff and his deputies and is not subject to . . . official immunity. In contrast, the determination of *what* medical treatment to provide *is* an act of discretion subject to official immunity."[21] Because the

---

[19] (Punctuation and citation omitted.) *Gish*, 302 Ga. App. at 857 (1).

[20] (Punctuation omitted.) Id. at 858 (1).

[21] (Emphasis in original.) *Howard*, 239 Ga. App. at 411 (2) (b). See also *Murphy v. Bajjani*, 282 Ga. 197, 198-200 (1) (647 SE2d 54) (2007) (explaining that the statute at issue in that case (which statute, similar to this case, imposed a duty upon certain county actors) was "a textbook example of the difference between statutorily-mandated action and a ministerial act, as it clearly requires that action be taken and sets forth parameters for the action to be taken, but the action required is not simple, absolute, and definite, arising under conditions admitted or proved to

determination of how to provide adequate medical care to the prisoners at the jail involved the use of discretion by Sheriff Warren and Brocker, and because Graham has failed to allege any facts that establish that either party acted with wilfulness, malice, or corruption, the trial court correctly determined that they are shielded from personal liability by official immunity.

2. Further, Graham claims that the trial court erred by finding that Justin was not a third-party beneficiary to the contract between the Cobb County Sheriff's Office and WellStar and consequently denying his breach of contract claims. We disagree.

"The beneficiary of a contract made between other parties for his benefit may maintain an action against the promisor on the contract."[22] "In order for a third party to have standing to enforce a contract[,] . . . it must clearly appear from the contract that it was intended for his benefit. The mere fact that he would benefit from performance of the agreement is not alone sufficient."[23]

---

exist, and requiring merely the execution of a specific duty that is the hallmark of a ministerial duty") (punctuation omitted).

[22] OCGA § 9-2-20 (b).

[23] (Punctuation and emphasis omitted.) *Walls, Inc. v. Atlantic Realty Co.*, 186 Ga. App. 389, 391 (1) (367 SE2d 278) (1988) (holding that because the express terms of a contract explicitly limited beneficiaries of the contract to the signatory parties, the plaintiff could not allege contract claim as a third-party beneficiary).

Here, under the express terms of the contract, there are no third-party beneficiaries to the agreement.[24] . Accordingly, this enumeration is without merit.

3. Graham next argues that the trial court erred by granting summary judgment as to his punitive damages claim for the alleged Eighth Amendment violations. Based on our conclusions that the trial court correctly granted summary judgment to Cobb County, Sheriff Warren, and Brocker in Divisions 1 and 2, this enumeration is without merit.[25]

4. Finally, Graham argues that the trial court erred by denying his motion to compel discovery. Nevertheless, because he has failed to establish through his argument on appeal that the trial court abused its discretion by denying the motion, we will not disturb this ruling.[26]

*Judgment affirmed. Andrews and Boggs, JJ., concur.*

---

[24] See id. at 392 (1).

[25] See *Chaney v. Harrison & Lynam, LLC*, 308 Ga. App. 808, 819 (3) (708 SE2d 672) (2011).

[26] See *Medical Staffing Network, Inc. v. Connors*, 313 Ga. App. 645, 650 (2) (722 SE2d 370) (2010).