**FIRST DIVISION**
**DOYLE, C. J.,**
**ANDREWS, P. J., and RAY, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**July 14, 2016**

# In the Court of Appeals of Georgia

A16A1600. GRAHAM et al. v. WELLSTAR HEALTH SYSTEM, INC. et al.

ANDREWS, Presiding Judge.

This appeal is from the grant of partial summary judgment in an action arising out of the death of Justin Graham due to liver failure following his arrest for DUI. The operative facts of the case are fully set forth in a previous appeal and will not be reiterated here. See *Graham v. Cobb County*, 316 Ga. App. 738 (730 SE2d 439) (2012).

Subsequent to that earlier appeal, Graham's family (hereinafter Graham) filed a third amendment to the complaint withdrawing all remaining claims and instead asserting the following claims: (1) simple negligence as to Dr. Clarence Hendrix as chief medical officer at the Cobb County Adult Detention Infirmary, and as to David

Howell as Administrator for Wellstar Health Systems; (2) professional negligence as to Dr. Hendrix; (3) simple negligence as to Wellstar under the doctrine of respondeat superior based on the acts of Dr. Hendrix and David Howell; (4) Negligence per se as to Wellstar; (5) wrongful death as to all defendants; and (6) pain and suffering as to all defendants.

On February 16, 2015, as clarified on reconsideration on February 23, 2015, the trial court granted summary judgment for the defendants on the negligence and wrongful death claims asserted against Wellstar and Howell. This appeal followed.

1. *Negligence per se.* Graham contends that by contracting with the Cobb County Sheriff's Office to provide medical care for jail detainees, Wellstar owed a duty under OCGA §§ 42-5-2 (a), 42-4-4 (a) (2), and 42-4-32 (d) to provide needed medical care for detainees, and breached that duty in its mismanagement of Graham's care. However, as noted by the trial court in its order on February 23, 2015, Graham never pleaded any application and violation of OCGA §§ 42-4-4 (a) (2) or 42-4-32 (d) against Wellstar in the third amended complaint. The amended complaint did assert a per se violation of OCGA § 42-5-2 (a), but to the extent that statute applied to Wellstar by virtue of its contract with the Cobb County Sheriff's Office, it created an obligation to provide detainees with access to medical care, but did not address the

2

issue of proper medical care. *Epps v. Gwinnett County*, 231 Ga. App. 664, 670 (8) (499 SE2d 657) (1998). As it is undisputed Graham was provided access to medical care, the trial court did not err in concluding OCGA § 42-5-2 (a) provides no basis for a negligence per se claim against Wellstar.

2. *Ordinary negligence or professional negligence.* The trial court found Graham's ordinary negligence claims actually were claims for professional negligence and granted summary judgment for the defendants on the basis the expert affidavits filed in the case were insufficient to support any such claims. Graham contends the trial court erred in classifying the claims against Wellstar and Howell as professional negligence, but even so, the expert affidavits specifically incorporated in the third amended complaint sufficiently stated specific examples of duty and alleged breach that support claims for professional negligence.

"Whether a complaint alleges ordinary negligence or professional malpractice is a question of law for the court, regardless of how the plaintiff categorizes it." (Citation and punctuation omitted.) *Grady Gen. Hosp. v. King*, 288 Ga. App. 101, 102 (653 SE2d 367) (2007). Accord, *Burke v. Paul*, 289 Ga. App. 826, 828 (658 SE2d 430) (2008). The court must look at the substance of the action, and if the alleged negligence required exercising professional skill and judgment to comply with a

standard of conduct, the action will involve professional negligence. *Piedmont Hosp. v. D. M.,* 335 Ga. App. 442, 445 (779 SE2d 36) (2015); *Burke v. Paul*, supra at 828.

The gravamen of the complaint in this case was that the defendants failed to recognize the severity of Graham's condition, failed to monitor his condition, and failed to take appropriate measures to try to forestall the progressive liver failure. In short, the complaint alleges the defendants, through their inattention, neglected Graham to the point of irreversible liver failure and death. We find the trial court properly determined the complaint stated claims for professional negligence instead of ordinary negligence. However, the trial court erred in concluding the expert affidavits on file were insufficient to support those professional negligence claims.

The expert affidavits in the record were originally submitted in support of the professional negligence asserted against Dr. Hendrix and various members of the nursing staff, but the affidavits also contain multiple averments pertaining to the standard of care applicable to Wellstar and the administrator Howell. Dr. Robert Kaufmann identified a standard of care requiring supervision of healthcare personnel and policies and procedures that insure timely review of a patient's care. Based on his review of Graham's treatment records, Dr. Kaufmann opined that was not done, and specifically faulted the Administrator for the failure to actively monitor the medical

4

care being provided in the facility. Other specific violations of an applicable standard of care included the nursing staff's failure to monitor Graham's input and output; failure to monitor changes in Graham's abdomen for any ascites buildup; failure to document administration of IV fluids; failure to communicate abnormal lab values to the physician; and failure to document sufficient data for two Code Blue reports.

Dr. Mark Griffis averred the same standards of care and failures of the nursing staff and the Administrator iterated by Dr. Kaufmann. Dr. Griffis emphasized the standard of care of conscientiously supervising healthcare providers, monitoring the patient's care and condition, and intervening when necessary, and noted the breach of that standard in Graham's case.

Based on his review of the records of Graham's treatment, Patrick Washington, a registered nurse, listed multiple deficiencies of the nursing staff: the failure to procure Graham's transfer to the hospital following two Code Blue incidents; failure to report lab results or follow-up lab results with the physician on a timely basis; failure to report to the management elevated lab results and vital sign levels that indicated the need for immediate intervention; failure to report the continuous elevation of pulse rates; failure to report alert levels of bilirubin, and non-resolving jaundice for days; failure to record the patient's input and output; failure to request

the physician timely to attend to Graham as his condition worsened; and failure to document adequately Graham's status for multiple days.

These affidavits set forth "at least one negligent act or omission claimed to exist and the factual basis for each such claim," OCGA § 9-11-9.1 (a) (3), and thus the trial court should not have granted summary judgment for the defendants on the professional negligence claims asserted against Wellstar and the administrator Howell.

3. *Wrongful death claims.* In the order entered on February 23, 2015, the trial court found that as Graham's negligence claims against Wellstar and Howell failed, so, too, must the wrongful death claims asserted against those two defendants. In light of our decision that the trial court erred in granting summary judgment for Wellstar and Howell on those negligence claims, the trial court likewise erred in similarly disposing of the wrongful death claims.

*Judgment affirmed in part and reversed in part. Doyle, C. J., and Ray, J., concur.*

6