**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**BROWN and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**June 23, 2023**

# In the Court of Appeals of Georgia

A23A0301. LUNDY et al. v. HANCOCK COUNTY et al.

A23A0423. LUNDY et al. v. HANCOCK COUNTY et al.

McFADDEN, Presiding Judge.

Eric Walker committed suicide while being held at the Hancock County jail. Cijii Lundy, as Walker's surviving spouse and as administratrix of his estate (collectively, "Lundy"), filed a complaint asserting claims of negligence against Hancock County, Hancock County Sheriff's Office, Sheriff Terrell Primus, Captain Pat Williams, Jail Administrator Steve Mayweather, Sergeant Marlin Primus, Deputy John Nelson, and Jail Officers Gregory Phillips, Joel Kemp, and Jacqueline Foster. Hancock County and the sheriff's office moved for judgment on the pleadings based on sovereign immunity and the individual defendants moved for summary judgment based on, among other things, official immunity. After a hearing on the motions, at

which Lundy conceded that the sheriff's office was not a legal entity capable of being sued,[1] the trial court granted both motions in separate orders, finding that the claims against Hancock County were barred by sovereign immunity and that the claims against the individual defendants in their individual capacities were barred by official immunity.

Lundy has filed two related appeals challenging the trial court's rulings. In Case No. A23A0301, we affirm the grant of judgment on the pleadings because Hancock County's sovereign immunity has not been waived. In Case No. A23A0423, we reverse the grant of summary judgment to jail officers Phillips and Kemp because there are genuine issues of material fact as to whether they negligently failed to perform the ministerial task of checking on Walker every 15 minutes. But we affirm the grant of summary judgment to the other individual defendants because Lundy has failed to point to evidence showing that they performed a discretionary act maliciously or a ministerial act negligently.

*Case No. A23A0301.*

[1]See *Brantley v. Jones*, 363 Ga. App. 466, 467 n. 1 (871 SE2d 87) (2022) (sheriff's office is "not [a] separate legal entit[y] capable of being sued"); *Seibert v. Alexander*, 351 Ga. App. 446, 448 (1) (829 SE2d 473) (2019) (adopting persuasive federal authority that, in Georgia, a sheriff's office is not a legal entity that can be sued).

2

1. *Standard for judgment on the pleadings.*

Lundy claims that the trial court applied the wrong legal standard in ruling on the motion for judgment on the pleadings. But she has not identified any incorrect standard the court purportedly applied, nor has she cited evidence in the record supporting her claim or otherwise showing that the court applied the wrong standard. And contrary to her claim, a review of the trial court's order reveals that the court cited OCGA § 9-11-12 (c), the code section governing motions for judgment on the pleadings, and stated that the motion was being considered under the standards detailed in *Rolling Pin Kitchen Emporium v. Kaas*, 241 Ga. App. 577 (527 SE2d 248) (1999). As that case correctly provides:

> In deciding a motion for judgment on the pleadings, the issue is whether the undisputed facts appearing from the pleadings entitle the movant to judgment as a matter of law. In deciding whether the movant is entitled to judgment as a matter of law, all well-pleaded material allegations of the opposing party's pleading are to be taken as true, and all allegations of the moving party which have been denied are taken as false. But this applies to factual allegations. The trial court need not adopt a party's legal conclusions based on these facts. OCGA § 9-11-12 (c).

Id. at 578 (2) (citations, punctuation, and emphasis omitted).

Given that the trial court's order references the correct standards and that Lundy has failed to point to any "affirmative evidence of an error, we will not rely on

3

speculation. . . . Instead, we will rely on the presumption in favor of the regularity and legality of all proceedings in the trial court." *Nix v. State*, 354 Ga. App. 47, 58 (8) (839 SE2d 687) (2020) (citation and punctuation omitted).

2. *Matters outside the pleadings.*

Lundy enumerates that to the extent the trial court considered matters outside the pleadings and treated the motion as one for summary judgment, she was denied due process and an opportunity to be heard. But once again, she has failed to support her enumeration with any reference to the record and she has not identified any particular matter outside the pleadings that the trial court purportedly considered in ruling on the motion. Accordingly, "[t]his enumeration presents nothing for review[.]" *Anderson v. Barrow County*, 256 Ga. App. 160, 163 (2) (568 SE2d 68) (2002). See Court of Appeals Rule 25 (d) (1) (i) ("Each enumerated error shall be supported in the brief by specific reference to the record or transcript. In the absence of a specific reference, the Court will not search for and may not consider that enumeration.").

3. *Sovereign immunity.*

Lundy contends that the trial court erred in granting the motion for judgment on the pleadings because Hancock County waived its sovereign immunity. We disagree.

"As provided in Georgia's constitution, sovereign immunity extends to the counties, and a county's sovereign immunity can only be waived by an Act of the General Assembly which specifically provides that sovereign immunity is thereby waived and the extent of such waiver." *McCobb v. Clayton County*, 309 Ga. App. 217 (1) (a) (710 SE2d 207) (2011) (citations and punctuation omitted). "Whether a county has waived sovereign immunity is a threshold issue and not a mere defense to liability. A waiver of sovereign immunity must be established by the party seeking to benefit from that waiver, and when a litigant fails to bear this burden, the trial court must dismiss the complaint . . . for lack of subject-matter jurisdiction." *Ramos v. Owens*, 366 Ga. App. 216, 217-218 (881 SE2d 464) (2022) (citations and punctuation omitted). Accord *Fulton County School Dist. v. Jenkins*, 347 Ga. App. 448, 450 (820 SE2d 75) (2018) (waiver of sovereign immunity must be established by the party seeking to benefit from such waiver). "Hence, the burden was on [Lundy] to show that [there has been a] waiver of [the] county's sovereign immunity." *Marshall v. McIntosh County*, 327 Ga. App. 416, 417 (1) (759 SE2d 269) (2014).

(a) *OCGA §§ 42-4-4 and 42-5-2 (medical aid to inmates).*

Lundy first argues that Hancock County's sovereign immunity was waived by OCGA §§ 42-4-4 and 42-5-2, concerning the provision of medical aid to inmates. But "[t]he plain language of [those code sections] does not provide for a specific waiver of governmental immunity nor the extent of such a waiver, and therefore, no waiver can be implied or shown." *Ga. Dept. of Natural Resources v. Center for a Sustainable Coast*, 294 Ga. 593, 603 (2) (755 SE2d 184) (2014). See *Marshall,* supra ("Sovereign immunity can only be waived pursuant to a legislative act which specifically provides that sovereign immunity is waived and describes the extent of such waiver.") (citation and punctuation omitted); *Fulton County School Dist.*, supra at 450 (implied waivers of sovereign immunity are not favored).

Indeed, this court has held that neither of the code sections cited by Lundy waives sovereign immunity. "While OCGA § 42-5-2 (a) imposes upon the county the duty and cost of medical care for inmates in its custody, it does not waive sovereign immunity of the county or its agents or employees." *Graham v. Cobb County*, 316 Ga. App. 738, 742 (1) (b) (i) (730 SE2d 439) (2012). Accord *Gish v. Thomas*, 302 Ga. App. 854, 862-863 (4) (691 SE2d 900) (2010) (OCGA § 42-5-2 does not waive sovereign immunity). Likewise, while "OCGA § 42-4-4 (a) (2) . . . places certain

6

duties on a sheriff to provide an inmate with medical care, that statute also fails to include language waiving [sovereign] immunity[.]" *Tattnall County v. Armstrong*, 333 Ga. App. 46, 52 (1) (775 SE2d 573) (2015), overruled in part on other grounds, *Rivera v. Washington*, 298 Ga. 770, 778 n. 7 (784 SE2d 775) (2016).

We note that Lundy's reliance on *Macon-Bibb County Hosp. Auth. v. Houston County*, 207 Ga. App. 530, 532 (3) (428 SE2d 374) (1993) is misplaced since that case, unlike the instant case, involved a medical provider's claims against a county for reimbursement of medical expenses. Under the circumstances of this case, the trial court did not err in concluding that Lundy failed to carry her burden of showing a waiver of sovereign immunity by relying on statutes which do not specify any such waiver or the extent thereof. See *Ga. Dept. of Corrections v. James*, 312 Ga. App. 190, 193-194 (1) (718 SE2d 55) (2011) (no waiver of sovereign immunity by OCGA § 42-2-5 and other code sections because they did not provide for a specific waiver of sovereign immunity or describe the extent of such waiver), overruled in part on other grounds, *Rivera*, supra.

(b) *Insurance.*

Lundy claims that Hancock County waived its sovereign immunity by purchasing liability insurance that covers the incident in this case. However, "the

defense of sovereign immunity to tort liability cannot be waived by the mere purchase of insurance coverage." *Woodard v. Laurens County*, 265 Ga. 404, 405 (1) (456 SE2d 581) (1995). Moreover, Lundy has cited no evidence of the purported insurance policy or anything else in the record from which we could determine its existence or a waiver of sovereign immunity. The only record citation Lundy makes is to the response she filed in the trial court to the defense motion for judgment on the pleadings. "To the extent that [Lundy] is attempting to incorporate by reference . . . additional arguments into [her] appellate brief, that practice is not approved by this [c]ourt, and we decline to look in the record for matters which should have been set forth in the brief." *R&G Investments & Holdings v. American Family Ins. Co.*, 337 Ga. App. 588, 591 (1) (787 SE2d 765) (2016) (citation and punctuation omitted). See also *Fleming v. Advanced Stores Co.*, 301 Ga. App. 734, 735 (688 SE2d 414) (2009) ("It is not the function of this [c]ourt to cull the record on behalf of a party in search of instances of error.") (punctuation omitted); cf. Court of Appeals Rule 23(a) ("Parties may adopt, and are encouraged to adopt, all or a portion of another brief in the same case or from another case *pending in this Court*. The party adopting language from another brief shall specify precisely what portion of the other brief the party is adopting and list the case number, if different.") (emphasis added).

8

Accordingly, this claim provides no basis for finding reversible error. See *Bomia v. Ben Hill County School Dist.*, 320 Ga. App. 423, 425 (1) (740 SE2d 185) (2013) (appellant cited no evidence in record showing the existence of alleged liability insurance policy and failed to demonstrate a waiver of sovereign immunity).

4. *Federal claims.*

Lundy argues that the court erred in granting judgment on the pleadings because Hancock County does not have sovereign immunity against claims for federal constitutional violations. But as the trial court correctly found, Lundy's complaint, which alleged negligence claims under state law, did not assert federal claims under 42 USC § 1983.

> A county is liable only when the county's official policy causes a constitutional violation. . . . What is required to be proved, directly or circumstantially, is that a governing body has worked constitutional deprivation of a citizen pursuant to an impermissible or corrupt policy which is intentional and deliberate. In her complaint, [Lundy] does not allege [any constitutional deprivation or] that an officially promulgated policy or custom of [Hancock] County caused [any] injury. Accordingly, [she] has failed to allege conduct that would state a claim for liability under 42 USC § 1983[.]

*Conway v. Jones*, 353 Ga. App. 110, 113 (3) (836 SE2d 538) (2019) (citations and punctuation omitted).

5. *Remaining enumerations.*

Because of our holdings above, we need not address Lundy's additional claims of error in this case.

*Case No. A23A0423.*

6. *Summary judgment standard.*

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). In reviewing the trial court's grant of summary judgment, we view the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to Lundy as the non-moving party. See *In the Matter of Tapley*, 308 Ga. 577 (842 SE2d 36) (2020).

So viewed, the evidence shows that on July 31, 2020, Sergeant Marlon Primus and Deputy John Nelson responded to a 911 call of a public disturbance at a school, arrested Walker for disorderly conduct, and took him to the Hancock County jail. At the jail, Officers Phillips and Kemp placed Walker, who smelled of alcohol, into a cell to let him "detox" before completing his booking. The officers subsequently allowed Walker to make a telephone call to his mother, during which Walker made a comment about getting his death certificate ready because he was going to die in the jail that night. After the telephone call, Walker was returned to the holding cell and the officers finished booking another inmate into the jail.

10

During two subsequent checks of Walker in his cell, Officers Phillips and Kemp found him sitting on the bunk bed with fabric wrapped around his neck and tied to a bedpost. On each occasion, the officers removed the fabric and other items from the cell, leaving Walker in the cell wearing his underwear, socks, and a wave cap. Approximately twenty minutes later, Officer Phillips checked on Walker again and found that he had hanged himself from the corner of the bunk using his wave cap.

7. *Official immunity.*

As to tort claims against governmental officials and employees, the threshold question, rather than sovereign immunity, is official immunity. "Official immunity is applicable to government officials and employees sued in their individual capacities." *Stone v. Taylor*, 233 Ga. App. 886, 888 (2) (506 SE2d 161) (1998) (citation and punctuation omitted). "[O]fficial . . . immunity is an entitlement not to stand trial rather than a mere defense to liability. The issue of a government employee's official immunity must therefore be resolved as [a] threshold issue in a suit against the employee in his personal capacity." *Roberson v. McIntosh County School Dist.*, 326 Ga. App. 874, 876 (1) (755 SE2d 304) (2014). "Individual government employees are shielded by official immunity from damages suits unless the plaintiff can establish that the official negligently performed a ministerial act or

11

performed a discretionary act with malice or an intent to injure." *Glass v. Gates*, 311

Ga. App. 563, 574 (2) (716 SE2d 611) (2011).

> A ministerial act is commonly one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty. A discretionary act, however, calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed.

*Lowe v. Etheridge*, 361 Ga. App. 182, 184 (1) (862 SE2d 158) (2021) (citation and

punctuation omitted).

8. *Jail Officers Phillips and Kemp.*

In granting summary judgment to Officers Phillips and Kemp, the trial court

found that there was no evidence that either of them had acted with actual malice, so

they were entitled to official immunity unless they had negligently performed a

ministerial act. The court rejected Lundy's contention that the officers had negligently

failed to perform the ministerial duty of conducting a visual surveillance of Walker

at least every 15 minutes. The court found that "[t]he requirement of checking the cell

[of a suicidal inmate] not less than every 15 minutes (or continuously) would be a

ministerial act." But the court concluded that this ministerial duty had not been

triggered because Walker's booking process had not been completed. The trial court's conclusion was incorrect.

(a) *Hancock County policies.*

The Hancock County Jail Operations Manual establishes "the official departmental policy to which all Jail division personnel shall conform in performance of their official duties[.]" Policy 2.5 in the manual, governing suicide prevention, states that the detention facility, as caretaker, has a special relationship with a detainee, that the jail has a legal burden to protect the "safety and health of the detainee," and that "[h]eightened security measures are necessary to ensure the detaineee's suicidal ideation cannot be executed." Subsection (E) of that policy, entitled "Levels of Supervision," provides:

> 1. *Close Observation* is reserved for the detainee who is not actively suicidal, but expresses suicidal ideation and/or has a recent prior history of self-destructive behavior. This detainee should be observed by detention officers at staggered intervals not to exceed every 15 minutes.
>
> 2. *Constant Observation* is reserved for the detainee who is actively suicidal, either by threatening or engaging in the act of suicide. This detainee should be observed by a staff member on a continuous, uninterrupted basis.
>
> 3. Other supervision aids, (e.g. closed circuit television, detainee companion/watchers, etc.) can be utilized as a supplement to, but never as a substitute for, the above observation levels.

As the trial court correctly held, these policies clearly establish ministerial duties for detention officers to observe a detainee who has expressed suicidal ideation at intervals not to exceed 15 minutes and to observe a detainee who is either threatening or engaging in an act of suicide on a continuous basis. See *Erickson v. Waller*, 359 Ga. App. 630, 634 (859 SE2d 804) (2021) (a ministerial duty may be established by evidence of a written policy that is "so clear, definite and certain as merely to require the execution of a relatively simple, specific duty") (citation and punctuation omitted). Indeed, "[w]e have held, in the context of detention officers, that the acts of following established policies of inspecting and monitoring detainees are ministerial tasks." *Brantley v. Jones*, 363 Ga. App. 466, 475 (3) (b) (871 SE2d 87) (2022) (citation and punctuation omitted).

But contrary to the trial court's further ruling, there is no requirement that the booking process of a detainee be completed before these ministerial duties of supervision are triggered. The plain language of the policies imposes no such requirement. Instead they expressly apply to any "detainee." In finding otherwise, the trial court referred to another subsection of Policy 2.5, which provides that "[i]ntake screening for suicide risk must take place immediately upon booking[.]" But there is nothing in that subsection which indicates that the ministerial observation

14

requirements of Policy 2.5 (E) only apply after such intake screening and booking have taken place or that those observation requirements do not apply to an unbooked detainee, like Walker, who has been placed in a holding cell.

On the contrary, Policy 2.1, concerning inmate classification, establishes a "Holding Classification" of inmates. That policy provides that while waiting to be processed, an inmate is to be placed in a holding cell; that an officer should evaluate, among other things, the inmate's observed or reported behavior in making a holding cell assignment; and that separation of inmates into holding cells is to be made according to various criteria, including whether one is a "[s]uicidal arrestee."

Thus, it is apparent that the Policy 2.5 (E) mandatory observation levels of any suicidal detainee applied to an arrestee like Walker who was placed in a holding cell while awaiting booking. And because there are genuine issues of material fact as to whether Officers Phillips and Kemp negligently failed to perform the ministerial duties of observing Walker at least every 15 minutes, the trial court erred in granting summary judgment to them based on official immunity. See *Brantley*, supra at 476 (3) (b) (detention officers not entitled to summary judgment on the ground of official immunity where they failed to perform ministerial duty of observing suicidal inmate every 15 minutes); *Clark v. Prison Health Svcs.*, 257 Ga. App. 787, 794 (4) (c) (572

15

SE2d 342) (2002) (officers were not entitled to official immunity for breach of clear and simple duties of inspecting cells according to a prescribed schedule).

(b) *Right for any reason.*

Nevertheless, the officers argue that the trial court's grant of summary judgment to them should be affirmed as right for any reason, claiming that Walker's suicide was an unforeseeable intervening cause of death which absolves them of liability. See *City of Richmond Hill v. Maia*, 301 Ga. 257, 259 (1) (800 SE2d 573) (2017). But as in *Brantley*, which rejected this same argument under similar circumstances, the officers had a special relationship with Walker as his caretaker, such a special relationship is an exception to the general rule that suicide is an unforeseeable intervening cause, and there is evidence creating a jury issue as to whether Walker's suicide was a reasonably foreseeable consequence of the failure to perform required observations of Walker. See *Brantley*, supra at 476-478 (3) (c) (i). "Simply put, this is not a plain and undisputed case in which there is no proximate cause as a matter of law." Id. at 478 (3) (c) (i).

The officers' additional arguments that they are entitled to summary judgment under the doctrines of assumption of the risk and comparative negligence are likewise without merit. The trial court correctly rejected these arguments, finding that these

16

matters "are not proper for summary disposition in this case." Indeed, as this court has explained,

> there is no bright-line rule in Georgia under which the doctrines of assumption of the risk and comparative negligence always bar recovery in cases of suicide. To the contrary, we have recognized that determining a person's assumption of the risk when that person has killed himself or herself can be a fact-intensive inquiry appropriate for a jury. And, even in a case involving suicide, the degree that the defense of comparative negligence is applicable is a matter for the jury's consideration and is not determinable as a matter of law. Viewing the facts in the light most favorable to [Lundy], we agree with the trial court that the detention officers have not shown they are entitled to summary judgment based on theories of assumption of the risk or comparative negligence.

*Brantley*, supra at 480 (3) (d) (ii) (citations and punctuation omitted).

9. *The other individual defendants.*

As detailed below, Lundy has failed to show by the record that the trial court erred in granting summary judgment to the other individual defendants based on official immunity.

(a) *Policies and procedures.*

In two enumerations of error, Lundy generally avers that sheriff's office policies and procedures imposed ministerial duties and that the individual defendants are personally liable for any ministerial acts performed negligently. But in these two

17

enumerations, Lundy has not cited any specific policy or procedure imposing a ministerial duty, she has not indicated any particular defendant who was required to execute such a duty, and she has made no showing as to how such a duty was negligently performed. "It is not this court's role to speculate about the legal basis for an appellant's argument, and mere conclusory statements are not the type of meaningful argument contemplated by our rules." *Evans v. State*, 360 Ga. App. 596, 608 (11) (a) (859 SE2d 593) (2021) (citation and punctuation omitted). See *Griffith v. Robinson*, 366 Ga. App. 869, 871 (3) (884 SE2d 532) (2023) (appellant failed to point to any specific evidence showing a genuine issue of material fact as to whether appellees negligently performed a ministerial task or performed a discretionary act with malice).

(b) *Medical attention.*

Lundy claims in her third enumeration of error that the sheriff and his deputies were not entitled to official immunity because providing adequate medical attention to inmates is a ministerial act. Lundy cites *Howard v. Columbus*, 239 Ga. App. 399, 411 (2) (b) (521 SE2d 51) (1999) to support this claim. But as we have explained, *Howard* is merely physical precedent and is "not binding authority." *Tattnall*, supra at 51 (1) n. 8. Moreover, *Howard* itself recognized that "the determination of *what*

18

medical treatment to provide is an act of discretion subject to official immunity."

*Howard*, supra (emphasis in original). Accord *Graham v. Cobb County*, 316 Ga. App. 738, 743 (1) (b) (ii) (730 SE2d 439) (2012) (determination of how and what medical care to provide to jail inmates is a discretionary function subject to official immunity).

In this enumeration, Lundy has failed to specify, or point to evidence showing, what medical care was not provided by any particular defendant. The only record citation she makes in support of this enumeration is to her trial court response to the motion for summary judgment. But as noted above, attempting to incorporate by reference any arguments made before the trial court is not an approved practice and "if we were to permit this practice a party could evade entirely the word limitations on briefs established in our rules." *Evans*, supra at 610 (11) (b) (citation and punctuation omitted). See also *Monterey Community Council v. DeKalb County Planning Comm.*, 281 Ga. App. 873, 875 (1) (637 SE2d 488) (2006) ("We have repeatedly held that it is not our job to cull the record on behalf of a party. The responsibility to locate and cite evidence in the record rests with counsel, not this [c]ourt.") (citations and punctuation omitted).

> Because the determination of [what] medical care to [provide] . . . at the
> jail involved the use of discretion by [the defendants], and because
> [Lundy] has failed to [cite] any facts that establish that [they] acted with

19

wilfulness, malice, or corruption, the trial court correctly determined that they are shielded from personal liability by official immunity.

*Graham*, supra.

(c) *Foreseeability.*

In her fourth enumeration of error, Lundy asserts that there is a jury question as to the foreseeability of Walker's suicide. As discussed above, we agree with this assertion as to Officers Phillips and Kemp. But Lundy makes no argument, cites no specific evidence, and makes no showing as to how the question of foreseeability mandates a reversal of the trial court's official immunity findings as to any of the other individual defendants. Lundy "has failed to provide a discernible argument to support [her] bare assertion[.]" *In re Estate of Burkhalter*, 354 Ga. App. 231, 237 (2) (a) (840 SE2d 614) (2020). See also *Woods v. Hall*, 315 Ga. App. 93, 96 (726 SE2d 596) (2012) ("an assertion of error followed by a case citation is not legal argument, which requires, at a minimum, a discussion of the appropriate law as applied to the relevant facts") (citation, punctuation, and emphasis omitted).

(d) *Actual notice.*

Lundy next claims that the defendants had actual notice that Walker was a suicide risk. But Lundy "fails to provide even a single reference to authority, much

20

less apply that authority to the facts of this case or make a cognizable argument [showing error in the trial court's rulings]. As a result, [she] has also abandoned [this] claim[.]" *In re Estate of Burkhalter*, supra at 238 (2) (c). See also *Ellis v. Oles*, 364 Ga. App. 133, 135 (4) (873 SE2d 251) (2022) (no showing of reversible error where appellant did not describe what facts the trial court purportedly failed to consider); *Austin v. Cohen*, 251 Ga. App. 548 (554 SE2d 312) (2001) (no reversible error where appellant did not point to any distinct error of law or set forth cogent argument and citation of authority).

(e) *Assumption of the risk and comparative negligence.*

In her sixth enumeration of error, Lundy states that a jury question exists as to whether Walker assumed the risk or was comparatively negligent in committing suicide. As discussed above, the trial court actually found that the doctrines of assumption of the risk and comparative negligence were matters for a jury determination and were not proper grounds for summary judgment in this case. So this enumeration presents nothing for review.

(f) *Notice of violation of policies.*

Lundy's seventh enumeration of error states that Sheriff Primus, Chief Williams, and Jail Administrator Mayweather had actual or constructive notice of

violations of sheriff's office policies in the arrest and booking of Walker. But Lundy has not cited any evidence or legal authority, or made any argument in support of this enumeration. Rather, she only refers back to the paragraph of her brief concerning medical attention discussed above in Division 7. Given the complete absence of any argument or attempt to apply pertinent legal authority to relevant facts, this enumeration is also abandoned. See *In re Estate of Burkhalter*, supra.

(g) *Training.*

Lundy next enumerates that Sheriff Primus, Chief Williams, and Jail Administrator Williams are not entitled to official immunity because they were negligent in failing to ensure that one or more of the other defendants were properly trained in accordance with sheriff's office policies. Although Lundy has not cited any legal authority in support of this enumeration, she implies that training the unidentified individual officers was a ministerial function since she has alleged negligence, as opposed to malice, by the sheriff, chief, and jail administrator. But it has been "consistently held that the operation of a police department, including the degree of training and supervision to be provided its officers, is a discretionary governmental function as opposed to a ministerial . . . or administratively routine function." *Harvey v. Nichols*, 260 Ga. App. 187, 191 (1) (a) (581 SE2d 272) (2003)

22

(holding that sheriff was protected by official immunity for alleged negligence in training jail employees and failing to implement policies to prevent an inmate suicide), disapproved on other grounds by *City of Richmond Hill v. Maia*, 301 Ga. at 261 (1). See also *Carter v. Glenn*, 249 Ga. App. 414, 417 (2) (548 SE2d 110) (2001); *Bontwell v. Dept. of Corrections*, 226 Ga. App. 524, 527-528 (4) (a) (486 SE2d 917) (1997). Here, while Lundy refers to evidence of sheriff's office policies and an operations manual, she has not pointed out any evidence establishing that a specific officer was improperly trained or that the sheriff, chief, or jail administrator acted negligently, let alone maliciously, with regard to any particular training.

(h) *Arresting officers Primus and Nelson.*

Lundy's ninth and tenth enumerations of error claim that the arresting officers, Sergeant Marlin Primus and Deputy Nelson, were not entitled to official immunity because they falsely arrested Walker and because he was admitted to the jail against sheriff's office policies. Both enumerations are without merit.

With regard to Walker's arrest for disorderly conduct, which was based on the officers' response to a disturbance call and observations at the scene, Lundy has cited no evidence of a false arrest, and instead merely cites three federal cases without any supporting argument. As for Walker's admission to the jail, Lundy provides no legal

23

argument and points only to a portion of the sheriff's office manual pertaining to jail officers who admit an inmate, not to arresting officers who have transported a person to the jail. Lundy has thus failed in both enumerations to show error in the trial court's finding that arresting officers Primus and Nelson were entitled to summary judgment absent any evidence of malice. See *Griffith*, supra.

(i) *Officer Foster.*

The trial court found that Officer Foster worked in central control on the night of the suicide, had no interaction with Walker, could not leave her post, had no information that he was a suicide risk, and breached no duty to Walker. Lundy cites various policies and procedures, but she has made no cognizable argument showing that Officer Foster performed a discretionary act maliciously or a ministerial act negligently. This enumeration provides no grounds for reversal.

*Judgment affirmed in Case No. A23A0301. Judgment affirmed in part and reversed in part in Case No. A23A0423. Brown and Markle, JJ., concur.*

24